**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald WRIGHT, Defendant–Appellant.**

No. 92–7061.

United States Court of Appeals,
Tenth Circuit.

March 15, 1993.

Andrew C. Mergen, Dept. of Justice, Environment & Natural Resources Div., Washington, DC (Vicki A. O'Meara, Acting Asst. Atty. Gen., John Raley, U.S. Atty., Paul G. Hess, Asst. U.S. Atty., Muskogee, OK, Edward J. Shawaker and Larry Corcoran, Dept. of Justice, Environment Natural Resources Div., Washington, DC, with him on the brief), for plaintiff-appellee.

Craig P. Bryant, Asst. Federal Public Defender, Tulsa, OK, for defendant-appellant.

Before ANDERSON, McWILLIAMS, and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Appellant, Gerald Wright, entered a conditional guilty plea to a charge of violating 18 U.S.C. § 1001, which, *inter alia*, makes it a crime to make a false written report "in any matter within the jurisdiction of any department or agency of the United States." The false reports submitted by Mr. Wright contained water quality data required by regulations promulgated by the Environmental Protection Agency ("EPA") pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300f–300k (the "Act"). The reports were filed with the Oklahoma State Department of Health,

through the Sequoyah County Department of Health; and the EPA had granted primary enforcement authority over drinking water standards to the State of Oklahoma. Mr. Wright unsuccessfully moved to dismiss the indictment against him, on the ground that the reports he filed were not matters within the jurisdiction of the EPA and, therefore, the district court lacked jurisdiction. On appeal he reasserts his position. We hold that the reports were matters within the jurisdiction of the EPA. Accordingly, we affirm the district court's denial of the motion to dismiss, and the conviction.

## BACKGROUND

During the period 1987–1989, Mr. Wright was the superintendent and manager of a water treatment plant and distribution system at Lake Tenkiller, near Vian, Oklahoma. As part of his managerial duties he prepared and filed with the Sequoyah County (Oklahoma) Health Department monthly operating reports containing data on the suspended particulate matter (turbidity) in the water at his plant. These reports were false in that they purported to show information on turbidity from water samples when, in fact, no samples were analyzed or taken.

The reports, sampling, analytical, and record keeping requirements resulting in the type of data in question are required by federal regulations promulgated by the EPA pursuant to its authority and responsibility under the Act. 42 U.S.C. §§ 300g, 300g–1(b)(1), 300f(3); 40 C.F.R. §§ 141.13, 141.22, and 141.31 (1992). The regulations require, among other things, daily monitoring of turbidity and submission to the state of monthly reports of the daily values within 10 days of the end of the month. 40 C.F.R. §§ 141.22(a) and 141.31(a).

The Act permits a state to apply to the Administrator of the EPA for primary enforcement responsibility over drinking water standards. 42 U.S.C. § 300g–2. On March 30, 1977, the Administrator approved Oklahoma's application for primary enforcement responsibility, 42 Fed.Reg. 16,844, and Oklahoma had that authority

during the period in question. Within the State of Oklahoma, responsibility for enforcing drinking water standards has been given to the Department of Health, which provided the forms which Mr. Wright filled out and filed with the County Health Department. The County Health Department forwards filed forms to the State Health Department.

A federal grand jury indicted Mr. Wright on January 9, 1992, charging him with seven counts of violating 18 U.S.C. § 1001 by making false written statements in a matter within the jurisdiction of the EPA. After the district court denied his motion to dismiss the indictment on jurisdictional grounds, Mr. Wright entered into a plea agreement with the government pursuant to which he pled guilty to three counts of violating 18 U.S.C. § 1001, reserving his right to appeal the denial of his motion. Fed.R.Crim.P. 11(a)(2).

As part of the plea agreement, the parties stipulated that if Mr. Wright testified he would state that: (1) he at no time knew of the jurisdiction of the EPA or any other federal agency or department in connection with the requirement to file turbidity reports; (2) he did not have notice, at any time, that the turbidity reports would be reviewed by the EPA or by any other federal agency or department, or that the turbidity reports could serve as the basis of an enforcement action by the EPA or any other federal agency or department; and (3) that all of the monthly reports he prepared concerning water turbidity were submitted by him to the Sequoyah County Health Department, and not to the EPA or any other federal agency or department.

The parties also stipulated that if a named responsible official of the EPA testified he would state that the EPA: (1) conducts annual evaluations of the Oklahoma public water system program under the Act; (2) makes semiannual visits to the Oklahoma State Department of Health to review the state public water system; (3) conducts biannual audits of the state program, during which operational reports are randomly selected for review; and (4) makes annual grants to the Oklahoma De-

partment of Health which have ranged from approximately $500,000 to $700,000 since 1987. In addition, it was stipulated that such annual financial grants are dependent, in part, on the outcome of EPA's evaluation of the state public water program. The district court and the parties have treated these recitations as established facts, as do we.

## DISCUSSION

■ Title 18 U.S.C. § 1001 provides that: Whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The parties agree that "jurisdiction," as it is used in section 1001, is to be defined broadly. *Bryson v. United States*, 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969) (citations omitted). "The most natural, nontechnical reading of the statutory language is that it covers all matters confided to the authority of an agency or department." *United States v. Rogers*, 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984). Thus, an agency has jurisdiction under section 1001 "when it has the power to exercise authority in a particular situation." *Id.* A false statement falls within that jurisdiction when it concerns the "authorized functions of an agency or department," rather than "matters peripheral to the business of that body." *Id.*

■ The false statement need not be made directly to the federal agency to be within its jurisdiction. *See United States v. Wolf*, 645 F.2d 23, 25 (10th Cir.1981). *See also United States v. St. Michael's*

*Credit Union*, 880 F.2d 579, 591 (1st Cir. 1989); *United States v. Popow*, 821 F.2d 483, 486 (8th Cir.1987); *United States v. Suggs*, 755 F.2d 1538, 1542 (11th Cir.1985); *United States v. Petullo*, 709 F.2d 1178, 1180 (7th Cir.1983); *United States v. Baker*, 626 F.2d 512, 514 (5th Cir.1980). In addition, federal agency jurisdiction is not affected by a defendant's awareness of that jurisdiction, *United States v. Yermian*, 468 U.S. 63, 73–74, 104 S.Ct. 2936, 2941–42, 82 L.Ed.2d 53 (1984); *United States v. Montoya*, 716 F.2d 1340, 1345 (10th Cir.1983), or by his or her awareness that the false information would be submitted to or influence the action of a federal agency. *Baker*, 626 F.2d at 516.

■ Mr. Wright asserts that a writing does not fall within the jurisdiction of an agency unless there is a "direct relationship" between the writing and an authorized function of the agency. Appellant's Principal Brief at 8 (citing *United States v. Facchini*, 874 F.2d 638, 641 (9th Cir.1989) (en banc)). He then contends that there was no direct relationship between the reports he submitted and a function of the EPA "[b]ecause the EPA had surrendered primary authority for enforcement of Safe Drinking Water Act standards to the State of Oklahoma," Appellant's Principal Brief at 10, and because he filed the report with the state, not the EPA. *Id.* We disagree.

Regardless of the standard employed,[1] the false turbidity data filed by Mr. Wright fell within the jurisdiction of the EPA. A grant of primary authority is not a grant of exclusive authority. Congress passed the Act " 'to assure that water supply systems serving the public meet minimum national standards for the protection of public health.' " *Montgomery County v. Environmental Protection Agency*, 662 F.2d 1040, 1041 (4th Cir.1981) (quoting H.R.Rep. No. 93–1185, 93d Cong., 2d Sess. 1, *reprinted in* 1974 U.S.Code Cong. & Ad. News 6454). The Act requires the Administrator to promulgate maximum contaminant level goals and national primary drinking water regulations. 42 U.S.C.

---

1. *See, e.g., United States v. Herring*, 916 F.2d 1543, 1546 (11th Cir.), *cert. denied,* —— U.S. ——,

111 S.Ct. 2248, 114 L.Ed.2d 488 (1991).

§ 300g–1(b)(1). The regulations relating to the collection and reporting of turbidity data, described above, were promulgated pursuant to that charge and authority. The EPA retains the authority, in the discharge of its duties under the Act, to enforce its regulations; and, turbidity data clearly concern an authorized function of the EPA. *Cf. Wolf,* 645 F.2d at 26.

Furthermore, in this situation, the EPA is actively involved in assuring state compliance with national safe water standards. It audits, reviews, and evaluates the state of Oklahoma's program, including an inspection of the monthly reports of the type involved in this case. Such reports, therefore, directly implicate the ongoing function and mission of the agency. In addition, the Act *expressly* authorizes the EPA to take enforcement actions in states having primary enforcement authority. 42 U.S.C. § 300g–3(a), (b).

Finally, EPA's funding of the Oklahoma public water program is conditioned, in part, on the results of its annual evaluations of that program. This court is in accord with other circuits which have found that a state agency's use of federal funds, standing alone, is generally sufficient to establish jurisdiction under section 1001. *Suggs,* 755 F.2d at 1542; *see also Wolf,* 645 F.2d at 25 ("[w]e are in accord" with cases finding the jurisdictional requirement of section 1001 to be met when the "federal government acted as a supervisor of disbursement or was to reimburse the defrauded non-federal agency"); *Baker,* 626 F.2d at 514 n. 5 ("[T]he necessary link between deception of the non-federal agency and effect on the federal agency is provided by the federal agency's retention of 'the ultimate authority to see that the federal funds are properly spent.'").

## CONCLUSION

For the reasons stated, we agree with the district court's denial of Wright's motion to dismiss the indictment, and we AFFIRM the judgment of conviction.