**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Gregory W. FRAZIER, Defendant–Appellant, Cross–Appellee.**

**Nos. 94–4000, 94–4026.**

United States Court of Appeals, Tenth Circuit.

April 20, 1995.

---

**1108**

Stanley H. Olsen, Asst. U.S. Atty. (Scott M. Matheson, Jr., U.S. Atty., with him, on the brief), Salt Lake City, UT, for plaintiff-appellee.

Peter Stirba (Margaret H. Olson with him, on the brief), of Stirba & Hathaway, Salt Lake City, UT, for defendant-appellant.

Before SEYMOUR, Chief Judge, BALDOCK, Circuit Judge, and VAZQUEZ, District Judge.*

BALDOCK, Circuit Judge, for the Court in Parts I, II, III, and V, with SEYMOUR, Chief Judge, and VAZQUEZ, District Judge, concurring. VAZQUEZ, District Judge, for the Court in Part IV, with SEYMOUR, Chief Judge, concurring, and BALDOCK, Circuit Judge, dissenting.

Defendant was charged in Counts I, III, IV, VI, VIII, IX, X, and XI of an eleven-count indictment. A jury found Defendant guilty of violating 18 U.S.C. §§ 666 and 1001, Counts I and III of the indictment, respectively. The district court dismissed Counts VII and IX of the indictment at trial and the jury acquitted Defendant of the remaining counts. The district court granted Defendant's motion for judgment of acquittal on his 18 U.S.C. § 1001 conviction. Defendant appeals his conviction under 18 U.S.C. § 666 and the district court's application of U.S.S.G. § 2F1.1(b)(3)(A) to enhance his sentence. The government cross-appeals the district court's grant of Defendant's motion for judgment of acquittal. We have jurisdiction pursuant to 28 U.S.C. § 1291, 18 U.S.C. § 3742(a), and 18 U.S.C. § 3731.

Defendant was the president of the National Indian Business Counsel, a non-profit corporation doing business as United Tribe Service Center ("UTSC"). The UTSC existed to provide technical and social services for Alaskan natives and American Indians in the State of Utah. The United States Department of Labor ("DOL"), provided funding for the UTSC under the authority of the Job Training Partnership Act ("JTPA"), 29 U.S.C.A. §§ 1501–1781. JTPA and DOL regulations mandated that the funding be used solely for providing training to UTSC participants in job-search skills and techniques. In particular, one regulation required Defendant to secure DOL approval for any purchase of computer equipment over $500. Aplt.App. at 250. Defendant certified he would spend the federal grant money as required by regulation.

Defendant was indicted for, *inter alia*, intentionally misapplying property valued at $5,000 or more and owned by or under the care, custody or control of the UTSC, 18 U.S.C. § 666 (Count I), and making false statements to a government agency, 18 U.S.C. § 1001 (Count III). At trial, the government introduced testimony and evidence to show Defendant falsely certified training had been provided at the UTSC using gov-

* The Honorable Martha Vazquez, United States District Judge for the District of New Mexico, sitting by designation.

ernment funds. In fact, Defendant used the government funds to purchase computers. The record reflects Elizabeth David, who was the owner of the Computer Training Institute ("CTI") in Utah, signed a contract in June 1988 specifying she would provide computer training to UTSC participants for $10,000. Defendant then directed Ms. David to sign backdated invoices and cover letters showing CTI had provided the computer training and directed Betty Windy Boy, UTSC vice-president of services, to stamp the documents as received and file them in UTSC files "for back up for the checks that were being submitted." Aplt.App. at 441. Even though the computer training services were never provided, Defendant authorized a $10,000 check from the UTSC to Ms. David. With $8,206.64, Ms. David purchased computers and computer equipment and had the computers and equipment delivered to the UTSC. Ms. David kept for herself the remaining $1,793.36 balance.

The government also introduced an audit report prepared by Sorenson, May & Company ("Sorenson") to bolster its case.[1] Sorenson has been under contract to perform regulatory compliance audits for the DOL for ten years and was twice directed by the DOL to audit the UTSC. After performing the second audit, Sorenson concluded in its audit report that the CTI had not provided computer training services for the UTSC and that the UTSC had in fact used government funds to purchase computers and computer equipment.

After hearing the evidence, the jury convicted Defendant of violating both 18 U.S.C. §§ 666 and 1001. Defendant filed a motion for judgment of acquittal on his conviction under § 1001. The district court granted Defendant's motion for judgment of acquittal.

Prior to sentencing, a presentence report was prepared. The report indicated Defendant was eligible for a two-level sentence enhancement under U.S.S.G. § 2F1.1(b)(3)(A) because he misrepresented he was acting on behalf of an educational

agency during the commission of his offense. Defendant objected to the court's use of § 2F1.1(b)(3)(A) to enhance his sentence but the court overruled his objections. The court sentenced Defendant on Count I of the indictment to five years probation, with ten months home detention, and ordered him to pay $8,207 restitution and a fine of $7,500. This appeal followed.

On appeal, Defendant argues: (1) the district court erred in admitting the audit report; (2) the evidence was insufficient to support his conviction on Count I of the indictment; (3) Counts I and III of the indictment are multiplicious; and (4) the court incorrectly applied U.S.S.G. § 2F1.1(b)(3)(A) to him at sentencing. In its cross-appeal, the government argues the court erred in granting defendant's motion for judgment of acquittal on Count III of the indictment. We address Defendant's contentions in order, then move to the government's cross-appeal.

## I.

Defendant first argues the district court erred in admitting Sorenson's audit report because the report was hearsay.[2] We review the district court's decision to admit evidence for abuse of discretion. *United States v. McIntyre*, 997 F.2d 687, 698 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994).

Both parties agree the audit report was hearsay. However, the government contends the report was nevertheless properly admitted as a "business record" under Fed. R.Evid. 803(6), which provides an exception to the hearsay rule for:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or

---

1. The court admitted the report over Defendant's objections.

2. At trial Defendant objected to the audit on the basis that it was hearsay, cumulative and not proper expert opinion. On appeal Defendant argues only that the document was hearsay.

data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

We agree with the government's position. We apply the requirements of Rule 803(6) to the facts of this case. *See United States v. Cestnik,* 36 F.3d 904, 907 (10th Cir.1994) (applying requirements of Rule 803(6) to Western Union "to-send-money" forms).

The record reflects the audit report was made in the course of Sorenson's regular business activity and that it was the regular practice of Sorenson to create such a report. Sorenson had been under contract with the DOL for ten years to perform regulatory compliance audits and had twice audited the UTSC. As an accounting firm, Sorenson regularly prepared audit reports. Our review of the record convinces us the audit report qualifies in all respects as a business record.

Defendant contends however that the report is untrustworthy because it was prepared for purposes of litigation. Defendant explains that the DOL suspected Defendant of misappropriation of funds before it ordered Sorenson to audit the UTSC. The government responds the audit was not prepared for purposes of litigation but was instead a regulatory compliance audit, ordered by the DOL as part of its ongoing responsibility to assure its grantees complied with federal regulations. Based upon our review of the record, we cannot say the district court abused its discretion in admitting the report. Moreover, we are persuaded the report was trustworthy for three reasons. First, the report prepared by Sorenson had business significance apart from its use in the prosecution of Defendant because Sorenson was bound by contract to prepare the report and was interested in insuring the report was accurate. *See United States v. McIntyre,* 997 F.2d 687, 700 (10th Cir.1993) ("[i]n some cases, the interests of the business may be such that there exists a sufficient self-interest in the accuracy of the log

that we can find its contents to be trustworthy"), *cert. denied,* —— U.S. ——, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994). Second, Sorenson had ten years experience in preparing regulatory compliance audit reports for the DOL. Third, Sorenson was a neutral third party with nothing to gain from any possible litigation against Defendant. All three factors lend trustworthiness to the audit report. *See* 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 450, at 534–36 (2d ed. 1994) (listing as factors showing trustworthiness "extent to which the matter recorded is important to the business outside the context of litigation," experience of preparer, and absence of motive on behalf of preparer). We conclude the court did not err in admitting the audit report.[3]

## II.

■ Defendant next argues the evidence was insufficient to support his conviction on Count I of the indictment for violating 18 U.S.C. § 666. "We review the sufficiency of the evidence to determine if a reasonable juror could find beyond a reasonable doubt, from the evidence along with reasonable inferences, that ... [Defendant] was guilty." *United States v. Deninno,* 29 F.3d 572, 576 (10th Cir.), *amended,* 1994 U.S.App. Lexis 25622 (Aug. 8, 1994). "We view the evidence in the light most favorable to the government." *Id.*

Under 18 U.S.C. § 666, the government had to prove that Defendant: (1) was an agent of an organization, state, local, or Indian tribal government, or any agency thereof, (2) embezzled, stole, obtained by fraud, or otherwise without authority knowingly converted to the use of any person other than the rightful owner or intentionally misapplied property, (3) that is valued at $5,000 or more, and (4) that was owned by, or under the care, custody, or control of such organization, government, or agency. 18 U.S.C. § 666(a). Defendant contends the government did not prove elements two and three—*i.e.,* intentional misapplication and property valued at

---

3. Because we conclude the audit report was properly admitted under the business records exception, we need not decide whether the report

would also be admissible as a public record under Fed.R.Evid. 803(8).

$5,000 or more. We disagree on both elements.

First, we conclude the government introduced sufficient evidence to prove Defendant intentionally misapplied UTSC property. Elizabeth David testified that Defendant knew no computer training services had been provided and yet directed her to sign backdated invoices and cover letters certifying the training was provided. Betty Windy Boy testified Defendant knew no computer training had been provided and yet directed her to stamp the invoices as received and backdate them "for back up for the checks that were being submitted." Ms. David further testified she received a $10,000 check signed by Defendant for the training and stated Defendant told her to purchase computers with the money. Aplt.App. at 357–58. Based on all of this evidence, a reasonable juror could have concluded Defendant intentionally misapplied property owned by or under the care, custody or control of the UTSC.

■ Second, we conclude the government introduced sufficient evidence to prove the misapplied property was valued at $5,000 or more. Ms. David and Ms. Windy Boy testified that Defendant prepared and certified on invoices that Ms. David provided $10,000 in computer training services for the UTSC. Although Defendant certified $10,000 in federal grant money would be used for computer training services, Defendant instead directed $8,206.64 of the funds be used to purchase computers and computer equipment and $1,793.36 be given to Ms. David for her personal use. Based on this evidence, a reasonable juror could have concluded Defendant misapplied the entire amount of UTSC property—i.e., $10,000—which is double the amount the government was required to prove under § 666.

### III.

■ Defendant next argues that Counts I and III of the indictment are multiplicious.[4]

" 'Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior.' " *United States v. Meuli,* 8 F.3d 1481, 1485 (10th Cir.1993) (quoting *United States v. Dashney,* 937 F.2d 532, 540 n. 7 (10th Cir.), *cert. denied,* 502 U.S. 951, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1403, 128 L.Ed.2d 76 (1994). "The same act or transaction may constitute separate offenses if each offense requires some fact not required to establish the other." *Id.* Whether an indictment is multiplicious is a question of law which we review de novo. *United States v. Fleming,* 19 F.3d 1325, 1330 (10th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994).

Count I of the indictment charged Defendant with a violation of 18 U.S.C. § 666. Count III of the indictment charged Defendant with a violation of 18 U.S.C. § 1001. Defendant cites us to no case holding 18 U.S.C. §§ 666 and 1001 are multiplicious and we have found none in our research. After reading and comparing the two statutes, it is apparent to us 18 U.S.C. § 666 requires proof of several facts not required to establish a violation of 18 U.S.C. § 1001. We conclude Counts I and III of the indictment are not multiplicious. *See Meuli,* 8 F.3d at 1486.

### IV.

VAZQUEZ,[5] with SEYMOUR, Chief Judge, concurring.

■ Defendant argues that the district court incorrectly applied U.S.S.G. § 2F1.1(b)(3)(A) to enhance his sentence. We review the district court's interpretation and application of the sentencing guidelines de novo. *United States v. McAlpine,* 32 F.3d 484, 487–88 (10th Cir.1994).

■ The issue presented is whether Defendant's conduct falls within the scope of § 2F1.1(b)(3)(A). In interpreting the guidelines, we follow the clear, unambiguous language of the guidelines unless there is a

---

4. We address this issue because in Part V of this opinion we reverse the court's grant of Defendant's motion for judgment of acquittal on his conviction under § 1001.

5. The Honorable Martha Vazquez, United States District Judge for the District of New Mexico, sitting by designation.

manifestation of contrary intent. *United States v. Florentino*, 922 F.2d 1443, 1446 (10th Cir.1990). Moreover, commentary in the guidelines that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute or is inconsistent with or a plainly erroneous reading of that guideline. *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). With these principles in mind, we now examine the plain language of the guideline and the adjoining commentary.

Section 2F1.1(b)(3)(A) provides that a defendant's base offense level may be increased by two levels "if the offense involved ... a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious or political organization, or a government agency." Application note 4 to the commentary adjoining § 2F1.1(b)(3)(A) is both explanatory and interpretive of the guideline. It explicates several examples of conduct to which the guideline is intended to apply. Such conduct "would include a group of defendants who solicit contributions to a non-existent famine relief organization by mail, a defendant who diverts donations for a religiously affiliated school by telephone solicitations to church members in which the defendant falsely claims to be a fund-raiser for the school, or a defendant who poses as a federal collection agent in order to collect a delinquent student loan." U.S.S.G. § 2F1.1 comment. n. 4. Paragraph 4 of the background note to the commentary emphasizes the underlying purposes of sentence enhancement for such conduct. It explains that "[u]se of false pretenses involving charitable causes and government agencies enhances the sentences of defendants who take advantage of victims' trust in government or law enforcement agencies or their generosity and charitable motives." It further explains that "defendants who exploit victims' charitable impulses or trust in government create particular social harm."

▆▆▆▆ Turning first to the language of the guideline, we note that the plain language requires that the defendant misrepresent that he was acting on behalf of a charitable, educational, religious or political organization or a government agency. Misrepresent means "to represent incorrectly, improperly, or falsely" and "[it] usually involves a deliberate intention to deceive, either for profit or advantage." Random House Unabridged Dictionary 1230 (2d ed. 1993). The phrase "on behalf of" means: (1) as a representative of; or (2) in the interest or aid of. *Id.* at 188. Thus, the plain language of § 2F1.1(3)(A) requires that a defendant represent incorrectly, improperly or falsely that he is either acting "as a representative of" or "in the interest or aid of" a charitable, educational, religious or political organization or a government agency. Pursuant to this literal interpretation of the guideline, a defendant may be subject to enhanced punishment if he either falsely claims to be a representative of the organization, i.e., falsely claims that he has the capacity to act as an agent or employee of the organization, or if he falsely claims to act "in the interest or aid of" the organization. However, in accordance with the well-established canon of statutory construction we must look beyond the literal language of the guideline if reliance on that language would defeat the plain purpose of the statute. *Bob Jones University v. United States*, 461 U.S. 574, 586, 103 S.Ct. 2017, 2025–26, 76 L.Ed.2d 157 (1983); *see United States v. Florentino*, 922 F.2d 1443 (10th Cir.1990) (the guidelines should be interpreted as if they were a statute or court rule). Furthermore, we are bound by the adjoining interpretative and explanatory commentary to the guideline, unless it violates the Constitution or a federal statute or is inconsistent with or a plainly erroneous reading of that guideline. *Stinson*, —— U.S. at ——, 113 S.Ct. at 1915. The hypotheticals clearly do not violate the Constitution or a federal statute. Moreover, they are not "inconsistent with" or a "plainly erroneous reading" of the guideline. Far from being inconsistent with the guideline, the hypotheticals clarify the context in which the guideline was intended to apply. They define the parameters of conduct intended to fall within the purview of the guideline. In so doing, they demonstrate the Sentencing Commission's intent that the guideline apply where a defendant misrepresents his authority to act on behalf of a charitable organization or government agen-

cy, such as a defendant who claims he works on behalf of a *non-existent* charitable organization, or a defendant who *falsely* claims to be a fundraiser for a charitable organization, or a defendant who *poses* as a federal collection agent. *See United States v. Echevarria,* 33 F.3d 175 (2d Cir.1994) (U.S.S.G. § 2F1.1(b)(3)(A) applicable where defendant misrepresented that he was a "state doctor" and could thereby approve applications for benefits); *United States v. Hall,* 996 F.2d 284 (11th Cir.1993) (U.S.S.G. § 2F1.1(b)(3)(A) applicable where defendant collected phony taxes, falsely implying that he worked for the IRS); *United States v. Bakhtiari,* 913 F.2d 1053 (2d Cir.1990), *cert. denied* 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1990) (U.S.S.G. § 2F1.1(b)(3)(A) applicable where defendant falsely told victim he was employed by United States State Department and Department of Defense). *Cf. United States v. Starr,* 986 F.2d 281, 282–83 (8th Cir.1993) (U.S.S.G. § 2F1.1(b)(3)(A) inapplicable where the government failed to demonstrate that the defendant lacked authority to act on behalf of the charitable organization at the time of the offense).

Each of the hypotheticals clearly involves conduct that induces the victim to contribute funds because the defendant has falsely led the victim to believe that he has the capacity to act as an agent or employee for the charitable, educational, or political organization or government agency. In this way, the hypotheticals demonstrate that the purview of the guideline is narrower than that which may be discerned from a literal reading of the guideline. This narrower interpretation of the guideline is further supported by paragraph 4 of the background note to the commentary.

 The commentary background note emphasizes the underlying rationale for enhancing the sentence of a defendant who engages in conduct within the purview of the guideline, as envisioned by the Sentencing Commission. It characterizes § 2F1.1(b)(3)(A) as applying to a defendant who engages in "false pretenses" and who by engaging in such conduct exploits the gener-

osity and charitable motives of the victim or the victim's trust in government. Thus, when coupled with the hypotheticals, the background note demonstrates that the conduct intended to fall within the scope of the guideline is exploitative conduct which induces victims to act upon their charitable or trusting impulses due to the defendant's misrepresentation that he has authority to act on behalf of a charitable, educational, religious or political organization or a government agency.

In this case, it is undisputed that Defendant was president and chairman of the board of NIBC d/b/a UTSC, a non-profit corporation, which was funded by the United States Department of Labor to provide employment and training opportunities for American and Alaskan Indians through the DOL grant program. In his position as president and chairman of the board, Defendant was authorized to act on behalf of UTSC—an "educational organization" for purposes of the guideline. Thus, at no time during commission of the offense did Defendant appeal to the generosity and charitable or trusting impulses of his victim by falsely declaring that he had authority to act on behalf of an educational organization. Unlike the examples in the commentary, this case does not involve conduct whereby the defendant exploits his victim by claiming to have authority which in fact does not exist. Rather, Defendant as chairman and president of an educational organization used funds to which that organization was entitled for unauthorized purposes.[6]

The government relies upon *United States v. Marcum,* 16 F.3d 599 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 137, 130 L.Ed.2d 79 (1994), to support its contention that the district court correctly applied § 2F1.1(b)(3)(A) to enhance Defendant's sentence. In *Marcum,* the defendant was a corporal in a sheriff's department and president of a charitable organization that conducted bingo games. As president of the charitable organization, the defendant was in charge of administering the bingo games, which were held on a twice-weekly basis.

---

**6.** UTSC was entitled to over $10,000 of grant funds annually. This was an element of the misapplication charge for which Defendant was convicted.

Over a period of approximately eighteen months, the defendant skimmed 10% of the charitable proceeds for himself and his fellow deputies. During this time, the illegal skimmings accumulated to approximately $25,000. The Fourth Circuit held that because the defendant misrepresented to the public that he was conducting the bingo games wholly on behalf of the charitable organization, when, in fact, he was acting in part for himself and his fellow deputies, the guideline applied. *See id.* at 603.

We decline the Government's invitation to follow *Marcum.* The Fourth Circuit in *Marcum* applied the guideline to conduct which did not involve a false representation of the defendant's authority to act on behalf of the charitable organization. Indeed, the defendant, as president of the organization, had full authority to act on it's behalf. In light of the clear manifestation of the Sentencing Commission's intent as illustrated by the hypotheticals and the background note, we believe that the Fourth Circuit expanded the scope of the guideline beyond that which was contemplated by the Sentencing Commission.[7]

Furthermore, even if the Fourth Circuit correctly applied the guideline in *Marcum,* it would not mandate application in this case because *Marcum* is distinguishable. In *Marcum,* the defendant exploited the generosity and charitable impulses of his victims— members of the public—by conducting the bingo games ostensibly for the entire benefit of a charitable organization, when, in fact, the defendant diverted 10% of the proceeds to himself and to his fellow deputies. *See* U.S.S.G. § 2F1.1 comment. backg'd. para. 4. In this way, *Marcum* affirmatively solicited charitable contributions from the public, thereby inducing the public to act upon their "generosity" and "charitable motives."[8]

By contrast, here the Defendant did not affirmatively solicit contributions from the public, but rather as president and chairman of the board of an educational organization misapplied DOL grant funds to which the organization was entitled. Thus, he did not exploit the "generosity" and "charitable motives" of his victim, the DOL, in order to receive the funds, but instead misapplied DOL funds which had been previously allocated to his organization. The fact that he made a false statement certifying that the funds had been used for an authorized purpose does not, in any way, implicate the guideline.

Moreover, unlike the defendant in *Marcum,* Defendant did not solicit funds the purpose of which was, at least in part, to serve his *own personal interest.* Defendant did not gain personally from his misapplication of the DOL funds. The funds were used to purchase computers and computer equipment for the educational organization and to pay Ms. Elizabeth David, who was to provide the computer training. The purchase of the computers and computer equipment was unauthorized because Defendant was required to receive approval of the purchase of computers or computer equipment beyond $500, which he failed to do, and in this case the computers and computer equipment cost $8,206.64. The payment of Ms. David—of $1,793.36—was unauthorized because, Ms. David never, in fact, performed the training. Thus, this case is completely devoid of the kind of aggravating circumstances present in *Marcum.*

In conclusion, Defendant's conduct is simply too removed from that envisioned by the sentencing commission in fashioning § 2F1.1(b)(3)(A). His conduct is drastically different from any of the conduct explicated in the hypotheticals. Moreover, the "particular social harm" which the Sentencing Com-

---

7. At least one other circuit has defined the scope of § 2F1.1(b)(3)(A) to require that the defendant falsely represent that he has authority to act on behalf of the charitable, educational, religious or political organization or a government agency. *See United States v. Starr,* 986 F.2d 281, 282–83 (8th Cir.1993).

8. Although application of the guideline to such exploitative conduct superficially appears to serve the purpose of the guideline as elucidated in the background note of the commentary, the conduct in *Marcum* does not fall within the purview of the guideline. This is so, because the exploitation was not achieved by means of a *misrepresentation* of the defendant's *authority* to act on behalf of a charitable organization, but rather by virtue of the defendant's de facto position as an agent of the organization.

mission perceived as justifying an enhanced sentence of one who falsely represents one's authority—the exploitation of victims' generosity and charitable motives—is completely lacking here. It was precisely this exploitation, coupled with a misrepresentation of one's authority, which augmented the culpability of a defendant and rendered him subject to greater punishment than required by the base offense level. The kind of aggravating circumstances contemplated by § 2F1.1(b)(3)(A), justifying a two level increase in the base offense level, are simply not present in this case. Therefore, we reverse the district court's sentence of Defendant and remand for resentencing.

## V.

 In its cross-appeal, the government argues the district court erred in granting defendant's motion for judgment of acquittal on his conviction under 18 U.S.C. § 1001. We review the district court's grant of a defendant's motion for judgment of acquittal under the same standard applied by the district court when it considers the motion. *United States v. White*, 673 F.2d 299, 301 (10th Cir.1982).

> We must view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime. If the government has met that standard, we, as well as the trial court, must defer to the jury's verdict of guilty. This standard reflects a deep respect for the fact-finding function of the jury.

*Id.* at 301–02. (citations omitted).

Under 18 U.S.C. § 1001, the government is required to prove that the defendant:

> [I]n any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme,

or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry....

18 U.S.C. § 1001.

In the instant case, Defendant argues the government did not prove an essential element of § 1001—*i.e.*, that Defendant actually submitted his false statement.[9] In other words, Defendant contends § 1001 requires as an element the defendant to physically deliver or send his false statement to some person or entity. The district court was persuaded by this argument and stated "I think that there was no evidence to show that the specific documents set forth in Count 3 of the indictment, namely invoices and cover letters, were presented to the Department of labor or caused to be presented by this Defendant." Aplee.Supp.App. at 21.

 Contrary to Defendant's assertions, § 1001 does not require a defendant to physically submit his false statement to some person or entity. Section 1001 requires among other things that the defendant knowingly make a false statement in a matter within the jurisdiction of a United States department or agency. *See* 18 U.S.C. § 1001. "An agency has jurisdiction under section 1001 'when it has the power to exercise authority in a particular situation.'" *United States v. Wright*, 988 F.2d 1036, 1038 (10th Cir.1993). Applying § 1001 to the instant case, the government introduced evidence showing Defendant knowingly made false statements in invoices and cover letters and directed these documents be filed in UTSC files. Defendant's purpose in filing the documents was to create false documentation to deceive persons looking at the files that computer training had been provided for the grant money paid. The DOL had power to exercise authority over the files in that the files were subject to audit by the DOL. Thus, the government introduced evidence that Defen-

---

**9.** Defendant also argues that the statements made by Defendant were not "material" under § 1001. Defendant did not make this argument to the district court in his motion for judgment of acquittal. We decline to consider his argument because it is raised for the first time in this appeal. *See United States v. Mendoza–Lopez*, 7 F.3d 1483, 1485 n. 2 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1552, 128 L.Ed.2d 201 (1994).

dant knowingly made a false statement in a matter within the jurisdiction of the DOL. The jury convicted Defendant of violating § 1001 based on this evidence. We conclude the court erred in granting Defendant's motion for judgment of acquittal.

In sum, we REVERSE the court's grant of Defendant's motion for judgment of acquittal on Count III of the indictment. We also REVERSE the court's application of § 2F1.1(b)(3)(A) to Defendant. We REMAND for the court to reinstate the jury verdict on Count III and to resentence Defendant in accordance with this opinion. On all other issues, we AFFIRM.

BALDOCK, Circuit Judge, dissenting to Part IV of the court's opinion.

I respectfully dissent from the court's conclusion in Part IV that the district court incorrectly applied U.S.S.G. § 2F1.1(b)(3)(A) to the facts of the instant case. I conclude the court defines the scope of § 2F1.1(b)(3)(A) too narrowly. Specifically, I do not agree that § 2F1.1(b)(3)(A) applies only to cases where the defendant misrepresents he is acting "as a representative of" an agency or organization. Instead, I believe § 2F1.1(b)(3)(A) applies as well to a defendant who misrepresents he is acting "in the interest of" an agency or organization. Thus, I would affirm the district court's enhancement of Defendant's sentence under § 2F1.1(b)(3)(A).

We interpret the sentencing guidelines as if they were statutes. *United States v. Gacnik*, 50 F.3d 848, 852 (10th Cir.1995). Therefore, we "must follow the 'clear, unambiguous language [of the guidelines] if there is no manifestation of contrary intent.'" *Id.* (quoting *United States v. Goldbaum*, 879 F.2d 811, 813 (10th Cir.1989)). Moreover, we must follow the commentary and policy statements that "interpret [a] guideline or explain how it is to be applied." *Stinson v. United States*, —— U.S. ——, ——–——, 113 S.Ct. 1913, 1917–18, 123 L.Ed.2d 598 (1993) (quoting U.S.S.G. § 1B1.7).

The plain language of § 2F1.1(b)(3)(A) provides a two-level sentence enhancement where "the offense involved ... a misrepresentation that the defendant was acting *on behalf of* a charitable, educational, religious, or political organization, or a government agency." U.S.S.G. § 2F1.1(b)(3)(A) (emphasis added). Webster's Dictionary defines the phrase "on behalf of" alternatively "as a representative of" or "in the interest of." Webster's Ninth New Collegiate Dictionary 141 (1984). Thus, § 2F1.1(b)(3)(A) applies, by its plain terms, when the defendant misrepresents either that he is acting "as a representative of" or "in the interest of" one of the specified agencies or organizations.

A defendant misrepresents that he is acting "as a representative of" an agency or organization when he misrepresents his capacity as an employee, agent, or someone with authority to act for the agency or organization. For example, the Second Circuit applied § 2F1.1(b)(3)(A) where a defendant misrepresented he was a " 'state doctor' able to approve applications for Benefits." *United States v. Echevarria*, 33 F.3d 175, 179–80 (2d Cir.1994). In addition, the Eleventh Circuit applied § 2F1.1(b)(3)(A) where a defendant falsely implied that he worked for the Internal Revenue Service so that he could collect gift taxes. *United States v. Hall*, 996 F.2d 284, 286–87 (11th Cir.1993).

Additionally, a defendant misrepresents that he is acting in the interest of an agency or organization when he: (1) actually is an employee, agent, or someone with authority to act for the agency or organization, and (2) misrepresents he is acting in the interest of that agency or organization. Thus, the Fourth Circuit applied § 2F1.1(b)(3)(A) where a defendant, who was president of a charitable organization that conducted bingo games, misrepresented to the public he was acting in the interest of the charitable organization by collecting the public's monies for the bingo organization. In fact, the defendant skimmed a percentage of the collected money for himself and his cohorts. *United States v. Marcum*, 16 F.3d 599, 603 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 137, 130 L.Ed.2d 79 (1994). In addition, the Seventh Circuit applied § 2F1.1(b)(3)(A) to enhance the sentence of a defendant who misrepresented that he was acting in the interest of his church. In *United States v. Lilly*, 37 F.3d 1222, 1224 (7th Cir.1994), Mr.

Lilly, pastor at Faith Baptist Church · in Avon, Indiana, persuaded investors to purchase over $1.6 million in certificates of deposit from Faith Baptist with the promise that the money would be used to help the church expand its facilities. Pastor Lilly deposited the money in various bank accounts of the church, but withdrew funds for his own use and purchased four airplanes, a house, and made a down payment on a second house. Ultimately, the church went bankrupt owing over $1.3 million on the certificates of deposit. The Seventh Circuit summarily concluded § 2F1.1(b)(3)(A) applied to enhance Pastor Lilly's sentence because Lilly misrepresented "to all the investors that he was acting on behalf of [i.e., in the interest of] a charitable or religious organization." *Id.* at 1228.

Thus, courts have applied § 2F1.1(b)(3)(A) in accord with the plain meaning of the guideline's terms "on behalf of" to both "as a representative of" and "in the interest of"-type fraud cases. However, in the instant case, the court restricts the scope of the plain language of § 2F1.1(b)(3)(A). The court concludes that the guideline should apply only to "as a representative of" cases. *See* Majority op. at 1112. The court reasons that the examples listed in § 2F1.1(b)(3)(A) application note 4 and the commentary background statements express an intent to narrow the application of the plain terms of § 2F1.1(b)(3)(A). I disagree.

Neither the examples set forth in application note 4 nor the background statements to § 2F1.1(b)(3)(A) manifest an intent by the Sentencing Commission to narrow the scope of the plain language of § 2F1.1(b)(3)(A). Far from expressing any intent to narrow the scope of the plain language of § 2F1.1(b)(3)(A), application note 4 states that the three listed examples represent merely a few of many that would fall within the scope of the guideline: "[e]xamples of conduct to which this factor applies *would include....*" U.S.S.G. § 2F1.1(b)(3)(A) application note 4 (emphasis added). Moreover, simply because each of the three examples portrays an "as a representative of"-type case[1] does not, in the absence of definite, clear language, indicate that the Sentencing Commission intended that the guideline apply to only "as a representative of" cases. *See United States v. Gandy,* 36 F.3d 912, 914–15 (10th Cir.1994) (concluding examples listed in U.S.S.G. § 3B1.3 application note 2 after words "would include" did not constitute exclusive list prohibiting guideline from applying to other, unlisted situations). Moreover, the background commentary does not express an intent to restrict the scope of the plain language of § 2F1.1(b)(3)(A) to "as a representative of" cases. Contrary to the court's restrictive interpretation, the background commentary indicates that "[t]his guideline is designed to apply to a wide variety of fraud cases." U.S.S.G. § 2F1.1 commentary, background.

Thus, neither the examples set forth in application note 4 nor the commentary background statements support the court's restrictive reading of § 2F1.1(b)(3)(A).[2] I therefore believe § 2F1.1(b)(3)(A), in accord with its plain language, background commen-

---

1. Application note 4 to § 2F1.1(b)(3)(A) states: Examples of conduct to which this factor applies would include a group of defendants who solicit contributions to a non-existent famine relief organization by mail, a defendant who diverts donations for a religiously affiliated school by telephone solicitations to church members in which the defendant falsely claims to be a fund-raiser for the school, or a defendant who poses as a federal collection agent in order to collect a delinquent student loan.
 Each of these examples portrays an "as a representative of"-type case because in each the defendant misrepresents his capacity as an employee, agent, or someone with authority to act for the agency or organization (which can be either fictitious or real).

2. The majority's restrictive interpretation would thwart the purpose behind § 2F1.1(b)(3)(A) in some fraud cases. The guideline's purpose is to punish those who "take advantage of victims' trust in government or law enforcement agencies or their generosity and charitable motives." U.S.S.G. § 2F1.1(b)(3)(A) commentary, background. However, the majority would not apply the guideline in accord with its plain language to each case where its purpose was served. To illustrate, under the majority's reasoning, § 2F1.1(b)(3)(A) would not apply to the defendant in *Lilly* because the defendant was actually the pastor of Faith Baptist Church—i.e., the defendant could not misrepresent he was acting as a representative of the church because he was a representative of the church. However, had the defendant been posing as the pastor (and not actually the pastor), the result would change and the guideline would apply. The Sentencing Commission did not intend to draw this illusory distinction. Rather, the Sentencing Commission

tary, and interpretations by the Fourth and Seventh Circuits, applies where a defendant misrepresents he is acting "in the interest of" one of the specified agencies or organizations.

Applying these principles to the instant case, Defendant misrepresented he was acting in the interest of an educational agency, the UTSC. As the president of the UTSC, Defendant prepared or had prepared false documentation that certified he would use $10,000 grant money provided by the DOL for computer training services for UTSC clients. Instead of acting in the UTSC's interest, however, Defendant acted in his and Ms. David's interest by: (1) using $8,206.64 of the grant money to fund an unauthorized computer purchase of his own design, and (2) giving the remaining $1,793.36 to Ms. David.[3] Thus, because Defendant made a representation that he was acting in the interest of an educational agency, when in fact he was not, I conclude the district court correctly applied § 2F1.1(b)(3)(A) to enhance Defendant's sentence. I therefore respectfully dissent.

intended that the guideline apply to a wide variety of fraud cases to punish those who "take advantage of victims' trust in government or law enforcement agencies or their generosity and charitable motives." U.S.S.G. § 2F1.1(b)(3)(A) commentary, background.

**3.** The court suggests that Defendant would have had to benefit personally from his misapplication of the funds in order for the guideline to apply. Majority Op. at 1112. However, neither the plain language of § 2F1.1(b)(3)(A) nor its commentary specifies that the defendant must personally gain from his misrepresentation in order for the guideline to apply.