Augustus CONDUS, Christopher C. Harding, John D. Connor, Abram Schmier, Howard Phillips and David Oltchick, Plaintiffs,

v.

HOWARD SAVINGS BANK and The Federal Deposit Insurance Corporation, as Receiver for Howard Savings Bank, Defendants.

Leo A. GUTMAN and Georgia Gutman, as Joint Tenants, Plaintiffs,

v.

HOWARD SAVINGS BANK and The Federal Deposit Insurance Corporation, as Receiver for Howard Savings Bank, Defendants.

Nos. Civ. 89–5131(WGB), Civ. 91–2465(WGB) and Civ. 90–2397(WGB).

United States District Court, D. New Jersey.

Dec. 4, 1997.

Jared B. Stamell, Stamell & Schager, LLP, New York City, Joseph J. Tabacco, Jr., Berman Devalerio Pease & Tabacco, LLP, San Francisco, CA, for Plaintiffs.

Robert Novack, Kenneth J. Cesta, Edwards & Angell, Short Hills, NJ, Ealy Bennett, Federal Deposit Insurance Corporation, Legal Division, East Hartford, CT, for Defendant Federal Deposit Insurance Corporation.

## OPINION

BASSLER, District Judge.

Defendants object to the introduction into evidence of Plaintiffs' Exhibits 57, 67, and 68 on the ground that they constitute inadmissible hearsay. For the reasons set forth below, Defendants' objection is **overruled.**

## I. BACKGROUND

In early 1990, the Governance Committee of Howard Savings Bank ("Howard") hired Speer & Associates ("Speer") to make an independent assessment of the quality of Howard's credit administration process and the adequacy of Howard's loan loss reserves. (Tr. 2:232–33.) James Olson was the Speer representative who was responsible for the Howard assessment. (*Id.* at 232.) After conducting the assessment, Speer issued a number of reports. At least one of these reports was presented to Howard's Board of Directors.

At trial, since Olson was unavailable to testify, his deposition testimony was read to the jury with respect to these reports. Plaintiffs also sought to introduce three of these reports, labeled Plaintiffs' Exhibits 57, 67, and 68 ("Speer Reports"). Defendants raised a hearsay objection to the introduction of the Speer Reports. Plaintiffs responded that the Speer Reports were admissible on two separate grounds: (1) they were admissions of a party-opponent pursuant to Fed. R.Evid. 801(d)(2)(D); and (2) they were business records pursuant to Fed.R.Evid. 803(6). The Court tentatively sustained Defendants' objections from the bench, but permitted the parties to brief the issues.

## II. DISCUSSION

### A. Admission by a Party Opponent

■ Federal Rule of Evidence 801(d)(2)(D) provides: "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Both Plaintiffs and Defendants agree that the principal issue is whether Speer was a servant or an agent of Howard.

"Because the Federal Rules of Evidence do not define 'agent' or 'servant,' [the Third Circuit has held] that Congress intended Rule 801(d)(2)(D) 'to describe the traditional master-servant relationship as understood by common law agency doctrine.' " *Lippay v. Christos,* 996 F.2d 1490, 1497 (3d Cir.1993) (quoting *Boren v. Sable,* 887 F.2d 1032, 1038 (10th Cir.1989)). Additionally, because the Federal Rules of Evidence are to have uniform nationwide application, federal common law rules of agency apply rather than the agency law of the forum. *Id.*

The Third Circuit, in *American Tel. & Tel. Co. v. Winback and Conserve Program, Inc.,* a Lanham Act case, set forth the relevant principles of agency law:

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." Depending upon the right of control capable of being exercised by the principal over the agent, agents are characterized either as servants or independent contractors. Servants generally are employees of the principal and are subject to physical control by the principal.... Thus, if " 'the employer assumes the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract,' " a master-servant agency relationship has been created. If however, the agent is not subject to that degree of physical control, but is only subject to the general control and direction by the principal, the agent is termed an independent contractor. Thus, all agents who are not servants are "independent contractors." Moreover, all non-agents who contract to do work for another are also termed "independent contractors."

42 F.3d 1421, 1434–35 (3d Cir.1994) (citations omitted).

There is no serious dispute that Speer was an independent contractor as opposed to a servant. Speer is an outside company that was brought in to perform this one service for Howard. Speer is its own business enterprise and Speer and its employees were clearly not subject to the physical control necessary to support a finding that Speer was the servant of Howard. *See id.* at 1436–37 (finding that the "the principal's right of physical control, the place where the representatives work, the method of payment, [and] the fact that the representatives had their own business enterprises" were "precisely the factors normally used to distinguish between servants and independent contractors") (citation omitted).

■ This finding, however, does not end the inquiry. This Court must also determine whether Speer and its employees were "agent independent contractors or non-agent independent contractors." *Id.* at 1439. As stated by the Third Circuit:

The Restatement defines a non-agent independent contractor as follows:

A person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other is a non-agent contractor. He may be anyone who has made a contract and who is not an agent. The term is used colloquially to describe builders and others who have contracted to accomplish physical results not under the supervision of the one who has employed them to produce the results.

Restatement (Second) Agency § 14N, Comment (b). Thus, the district court should assess whether the representatives are analogized better to a firm that contracts to perform a particular, discrete task, such as to build a swimming pool, or to a party who is empowered to speak for another and bind the other in contracts. *Id.* The focus of this assessment is not physical control, but rather, the level of control that is exercised over the manner in which the representative accomplishes its assigned task. *Id.*

This Court has no trouble concluding that Speer and its employees were Howard's non-agent independent contractors. Plaintiffs cite a number of cases in which a court admitted into evidence an investigative report analyzing an accident or a business operation as a non-hearsay admission of a party opponent. (Plaintiffs' Memorandum in Support of Offer of Exhibits into Evidence at 4–5 & n. 3.) Without addressing each of these cases individually, none of them warrant a finding that an agency relationship existed. In each case, the person making the report was a regular employee of the party opponent or an employee of an affiliate of the party opponent, the court explicitly found that the person making the report was an agent of the party opponent, or the court assumed without discussion that the person making the report was the party opponent's agent.

Under the standards adopted by the Third Circuit in *Winback and Conserve Program,* this Court cannot conclude that Speer and its employees were agents of Howard. Speer

was a forensic bank examiner hired to "provide an independent assessment" of Howard's procedures. (Defendants Memorandum of Law in Opposition to the Introduction into Evidence of the Speer Reports ("Def.Mem."), Ex. A, Letter from George L. Albright, President of Speer to Donald Peterson, Chairman of the Governance Committee of Howard, dated June 6, 1990.) Howard did not control the method in which Speer conducted its assessment. Furthermore, Speer was not merely a mouthpiece for Howard. Rather, Speer, recognizing that its role was to provide an independent assessment, noted that in its final report there were several areas in which Speer and Howard's management "differed in direction or degree with [Howard's] plan as presented." These facts strongly support a finding that Speer was a non-agent independent contractor. *See Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir.1995) (stating that an expert witness charged with the duty to give his or her independent and impartial expert opinion, and not subject to the client's control with respect to the consultation or testimony he or she is hired to give, cannot constitute an agent), *cert. denied*, 516 U.S. 1145, 116 S.Ct. 1015, 134 L.Ed.2d 95 (1996); *see also Edwin J. Dobson, Jr., Inc. v. Rutgers*, 157 N.J.Super. 357, 390, 384 A.2d 1121 (Law Div.1978) (finding that an outside consultant, called the CPM consultant, was not the agent of Rutgers, where "the CPM consultant's role was to perform a function similar to that of the independent testing laboratory in respect to material, namely, were the conditions of the contract being met?" and where "Rutgers did not have the right to direct the CPM consultant as to how to perform its work"), *aff'd*, 180 N.J.Super. 350, 434 A.2d 1125 (App.Div.1981), *aff'd*, 90 N.J. 253, 447 A.2d 906 (1982); *cf. Lippay*, 996 F.2d at 1499 (finding that an informant was not a state undercover narcotics officer's agent because the officer "lacked the continuous supervisory control over [the informant] that would create an agency relationship for the purposes of Rule 801(d)(2)(D)"). Plaintiffs seek to distinguish *Raymark* on the ground that the *Raymark* court recognized that, in an appropriate setting, a court could find that an expert trial witness was an agent of the party utilizing the expert. (Pl. Mem. at 6–7 (citing *Raymark*, 61 F.3d at 163–64).) While the Court does not disagree with this proposition, this case does not present such an appropriate setting. To the extent that Plaintiffs' cases suggest that the mere hiring of an outside investigator to analyze a situation and issue a report creates an agency relationship, the court declines to adopt such reasoning as contrary to the standards enunciated by the Third Circuit in *American Tel. & Tel. Co.*, 42 F.3d at 1439 and *Raymark*, 61 F.3d at 163–64 & n. 20 and by Section 14N of the Restatement.

Since Speer is not an agent of Howard, the Speer Reports can not constitute an admission by Howard. Fed.R.Evid. 801(d)(2)(D); *see Raymark*, 61 F.3d at 164. Accordingly, the Speer Report is not admissible pursuant to Rule 801(d)(2)(D).

### B. Business Records

 Plaintiffs next argue that the Speer Reports are admissible as business records pursuant to Fed.R.Evid. 803(6).[1] The business records exception permits admission of documents containing hearsay provided there is foundation testimony by "the custodian or other qualified witness," that: (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by

---

1. Rule 803(6) provides:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

 . . . .

 A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information trans-mitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

the business. *United States v. Pelullo,* 964 F.2d 193, 200 (3d Cir.1992) (citing *United States v. Furst,* 886 F.2d 558, 571 (3d Cir. 1989)). The phrase "other qualified witness" should be given the broadest interpretation; the witness need not be the employee of the entity so long as he or she understands the system at *Id.* 201. Furthermore, in the occasional case, "the requirements for qualification as a business record can be met by documentary evidence, affidavits, or admissions of the parties, *i.e.,* by circumstantial evidence, or by a combination of direct and circumstantial evidence." *Id.* (citations omitted) (internal quotation marks omitted) (emphasis omitted); *see Furst,* 886 F.2d at 572. Defendants raise two arguments against the admissibility of the Speer Reports as business records: 1) that the foundational requirements set forth in *Pelullo* have not been established; and 2) that this is not the type of record that can qualify as a business record.

The Court finds that the foundational requirements for business records, as set forth in *Pelullo,* have been met. With respect to the first requirement, the testimony of Olson establishes that Speer employees created the Speer Reports after they interviewed a number of officers of the bank and reviewed Howard's loan policies and procedures, Howard's grading of loans, a summary of statistics on the consumer loan portfolio, and a portion of the commercial mortgage and commercial loans that were approved by the loan committee. (Tr. 2:233, 237–38.) Therefore, the persons responsible for the Speer Reports had personal knowledge of the matters contained within them. Furthermore, it was clearly Speer's duty, as part of its contractual undertaking, to provide an accurate report so that the Governance Committee could rely on the Speer Reports. (*See id.* at 4:110.)

The contemporaneously recorded requirement, in light of the nature of the business records being made, has also been met. Speer's preliminary assessment was made on January 26, 1990, less than a month after Speer began working on the Howard project. (*Id.* at 2:238–39.) Speer's final report was finished on March 5, 1990 and presented to Howard on March 6, 1990, a little more than two months after Speer began working on the Howard project. (*Id.* at 2:241, 3:43.) Furthermore, the investigation and fact-gathering used to create the Speer Reports were conducted right up until the presentation of the final report. (*Id.* at 2:241.) Clearly, therefore, the material contained in the Speer Reports was recorded "at or near the time" the information was obtained. Fed. R.Evid. 803(6).

Third, the Speer Reports were made in the ordinary course of a regularly conducted business activity. Speer specializes in precisely this type of consulting. It is their business to analyze banks and issue these types of reports. In fact, Speer has been engaged in over 400 such consulting assignments. (Tr. 2:229.) Olson specifically testified that these reports were made in the ordinary course of this consulting assignment. (*See Id.* at 3:99.)

Lastly, the Court is satisfied from Olson's testimony that Speer kept these records. Concededly, Olson never directly states that the reports that Speer routinely generated were regularly kept. However, Speer was a consulting company. Its entire business was to create these reports—they were brought in by banks to make assessments and issue reports of their findings. These reports obviously were the result of much labor. From these facts, the Court finds it highly implausible that Speer would simply dispose of the reports once the assignments were completed. Although the Court may not take judicial notice that the Speer Reports are business records, *see Pelullo,* 964 F.2d at 201–02, the Court is permitted to, and will, infer from the circumstantial evidence in the record that the Speer Reports were regularly kept by Speer. *Id.* at 201.

Turning to Defendants' next argument, the Court finds that the subject matter of the reports does not bar their admission as business records. Defendants argue that an expert report by definition cannot constitute a business record admissible under Rule 803(6). (Def.Mem. at 4.) Defendants, however, fail to set forth any support for this conclusory assertion. Cases cited by Plaintiffs demonstrate that financial reports and audits are admissible under Rule 803(6).

*United States v. Blackwell,* 954 F.Supp. 944, 976 (D.N.J.1997) (admitting financial audit where this type of record was created and maintained in the ordinary course of the preparer's business); *see United States v. Sokolow,* 91 F.3d 396, 403 (3d Cir.1996) (compilation and summary of over $7 million in unpaid insurance claims prepared by a third-party administrator admitted as a business record where the record was made and kept in the third-party administrator's regular course of business), *cert. denied,* —— U.S. ——, 117 S.Ct. 960, 136 L.Ed.2d 846 (1997); *United States v. Frazier,* 53 F.3d 1105, 1110 (10th Cir.1995) (regulatory compliance audit prepared by an independent contractor admissible under Rule 803(6) where this type of audit "was made in the course of [the independent contractor's] regular business activity and . . . it was the regular practice of [the independent contractor] to create such a report"); *cf.* 5 Joseph M. McLaughlin et al., *Weinstein's Federal Evidence* § 803.11[7][c], at 803–82 (2d ed.1997) (stating, with respect to the admissibility, as business records, of material prepared for litigation: "Expert opinion on a relevant matter should be excluded only in rare instances, particularly if the expert is independent of any party, and especially if the reports have been made available to the opposing party through discovery so that rebuttal evidence can be prepared.").

Defendants attempt to distinguish *Blackwell* and *Sokolow.* Defendants first argue that *Blackwell* is inapposite because in that case, the audit was found to be the business record of the party against which the audit was offered, rather than the business record of an outside consultant. (Defendants' Reply Memorandum in Opposition to the Admission of the Speer Reports ("Reply.Mem.") at 6.) Rule 803(6), however, does not limit the types of admissible business records to business records of party opponents. Here, the Speer Reports are being offered as business records of Speer. *Blackwell* supports the conclusion that financial reports and audits like the Speer Reports are admissible as business records provided that the regular foundational requirements for admission have been satisfied. 954 F.Supp. at 973–74.

Next, Defendants contend that *Sokolow* is distinguishable because in that case there was "a specific grant of agency authority to support the introduction of the records as an exception to the hearsay rule." (Reply Mem. at 6.) Such a distinction, however, is irrelevant. Rule 803(6) does not require such a grant of agency authority.

Finally, Defendants' failure to attempt to distinguish *Frazier* is particularly noteworthy. In *Frazier,* an independent, outside consultant conducted a financial audit of a party. 53 F.3d at 1109. The Tenth Circuit found the report summarizing the findings of the audit to be admissible as a business record of the outside consultant. *Id.* at 1110. The Court finds *Frazier* persuasive.

In order to admit the Speer Reports, the Court must also find that "the source of information or the method or circumstances of preparation [do not] indicate lack of trustworthiness." Fed.R.Evid. 803(6). The Court holds that the Speer Reports indicate trustworthiness because these reports had business significance apart from their use in this litigation and they are the type of reports upon which independent business decisions are routinely made. The Chairman of the Governance Committee, Donald Peterson, stated that the Governance Committee's purpose in hiring Speer was "for the board's comfort to assure ourselves that we were headed in a direction that was satisfactory." (Tr. 4:110.) Mr. Peterson also stated that they hired Speer "[t]o gain the benefit of the outside consultant of the bank that we were doing the best that we could." (*Id.*) Therefore, Howard intended to rely on the Speer Reports for business purposes independent of anticipated litigation. This fact creates an inference of trustworthiness supporting the admission of these reports pursuant to Rule 803(6). *See Frazier,* 53 F.3d at 1110 (finding that a regulatory compliance audit report made by an independent contractor was sufficiently trustworthy to be admitted as a business record despite the possibility that it was prepared for purposes of litigation, in part because the report "had business significance apart from its use in [the litigation]"); *In re Applin,* 108 B.R. 253, 260 & n. 11 (Bankr.E.D.Cal.1989); *cf. United States v.*

**920**

*Licavoli,* 604 F.2d 613, 622–23 (9th Cir.1979) (holding that an independent expert's written appraisal of a valuable painting was admissible as a business record of an insurance company where the insurance company relied upon the appraisal in settling a claim for the loss of that painting and the other foundational requirements for admission were not disputed).

There are also other indicia of trustworthiness supporting the admission of the Speer Reports. Speer was an independent consultant with no reason to issue an inaccurate report. *See Frazier,* 53 F.3d at 1110. Also, Howard itself considered Speer to be well qualified to make a trustworthy and accurate assessment. Mr. Peterson stated in his deposition that "[i]n looking at [Speer] and in even comparing it with other firms we came to the conclusion that these folks were the most skilled to do what we wanted to do in this area which led to our selection of them." (Deposition of Donald Peterson, dated August 25, 1992, at 166.) Finally, the fact the Speer Reports were critical of Howard's practices despite the fact that Howard hired Speer adds to the trustworthiness of the Reports. Speer certainly had no motive to be overly and unfairly critical of the Howard; if anything, one would expect the opposite.

Accordingly, the Court finds that the requirements of Rule 803(6) have been met and the Speer Reports are admissible.

III. CONCLUSION

For the reasons previously stated, the Court **overrules** Defendants' objection to the admission of the Speer Reports.