**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bonard Ray DENINNO, Defendant–
Appellant.**

No. 93–6278.

United States Court of Appeals,
Tenth Circuit.

July 14, 1994.

Rehearing and Suggestion for Rehearing
In Banc Denied Aug. 8, 1994.

M. Jay Farber, Asst. U.S. Atty. (Vicki Miles–LaGrange, U.S. Atty., with him on the brief), Oklahoma City, OK, for plaintiff-appellee.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, OK, for defendant-appellant.

Before TACHA and BRORBY, Circuit Judges, and BROWN,* District Judge.

BRORBY, Circuit Judge.

Bonard Ray Deninno was convicted of four drug offenses. Mr. Deninno[1] appeals the denial of a motion to suppress evidence, challenges his convictions, and asserts his sentence was erroneous. We affirm his convictions and his sentence.

## I

### Motion to Suppress

A state court issued a search warrant directing the search of a specific motel room. When the warrant was executed, Mr. Deninno was found in the motel room together with controlled substances and paraphernalia used in the manufacture of methamphetamine. Expert witnesses concluded a methamphetamine lab was installed and the parties were in the process of manufacturing methamphetamine.

Mr. Deninno moved to suppress the evidence found in the motel room asserting the affidavit supporting the issuance of the search warrant failed to show the existence of probable cause. The trial court found the motel room was registered to another and as Mr. Deninno failed to establish a reasonable expectation of privacy in the motel room, Mr. Deninno lacked standing to challenge the search. Alternatively, the trial court examined the affidavit in detail and concluded the search warrant was properly issued based upon an adequate showing of probable cause contained in the affidavit supporting the application for the search warrant. The motion

---

\* The Honorable Wesley E. Brown, Senior United States District Judge, District of Kansas, sitting by designation.

1. *See United States v. Souders,* No. 93–6280, Order and Judgment, 1994 WL 363539 (10th Cir. July 14, 1994). Mr. Souders was a codefendant with Mr. Deninno and testified for the prosecution.

to suppress the evidence found in the motel room was denied by the trial court.

Mr. Deninno appeals the denial of his motion to suppress. Mr. Deninno ignores the trial court's conclusion he lacked standing. In his brief, Mr. Deninno simply argues the absence of probable cause in the supporting affidavit.

■■■■ It is fundamental law that a person desiring to have evidence suppressed must first show he has standing to object to the search. *See United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). The facts contained in the record on appeal show the motel room was registered to another person. The facts were not in dispute as Mr. Deninno offered no contrary facts in his motion to suppress. The trial court properly found Mr. Deninno had not established a reasonable expectation of privacy in the motel room. *See United States v. Carr,* 939 F.2d 1442, 1446 (10th Cir.1991). Mr. Deninno did indeed fail to meet his burden to show he had standing to object to the search. For this reason, we need not address Mr. Deninno's arguments relating to the alleged absence of probable cause in the supporting affidavit.

## II

### Sufficiency of the Evidence

■■■■ On appeal, Mr. Deninno challenges the sufficiency of the evidence to support the jury's verdict. We review the sufficiency of the evidence to determine if a reasonable juror could find beyond a reasonable doubt, from the evidence along with reasonable inferences, that Mr. Deninno was guilty. *See United States v. Nicholson,* 17 F.3d 1294, 1298 (10th Cir.1994). We view the evidence in the light most favorable to the government. *United States v. Fleming,* 19 F.3d 1325, 1328 (10th Cir.1994).

The evidence supporting Mr. Deninno's guilt is overwhelming. Four individuals testified that at the request of Mr. Deninno they came to Oklahoma City and brought with them the glassware and chemicals to manufacture methamphetamine. According to the testimony, Mr. Deninno knew how to manufacture methamphetamine. Two of the individuals testified they worked all night in a motel room extracting ephedrine to start the process of manufacturing methamphetamine. Mr. Deninno periodically checked on their progress throughout the evening correcting them when mistakes were made. The next morning, Mr. Deninno gave one of the witnesses $1,000 and instructions to purchase the necessary equipment and other essential chemicals for the continued manufacture of methamphetamine.

When the search warrant was executed, the agents found in the motel room a methamphetamine lab and 1.8 liters of a liquid precursor containing detectable amounts of methamphetamine. Additionally, 8.5 grams of methamphetamine were found in Mr. Deninno's luggage. Expert witnesses testified the equipment found in the motel room was a methamphetamine lab and further testified that methamphetamine was in the process of being "cooked" at this lab in the motel room.

### A. Conspiracy to Manufacture Methamphetamine:

Mr. Deninno argues that there was no physical evidence methamphetamine was to be manufactured and that the evidence offered by the government shows it was a factual impossibility to manufacture methamphetamine as all of the necessary chemicals were not present. Mr. Deninno further argues that the government may have shown a conspiracy to extract ephedrine, a precursor to methamphetamine, but failed to show Mr. Deninno became a part of such an agreement.

■■■■ Mr. Deninno's argument merits little discussion. When a jury decides guilt or innocence, it must not close its eyes to the reasonable inferences that can be drawn from the physical evidence. The evidence is clear the parties intended and agreed to manufacture methamphetamine and the process was well under way when they were apprehended. The evidence also shows Mr. Deninno's involvement: he invited the participation of the coconspirators; he was the only participant who knew how to manufacture methamphetamine; and he wrote the

list of supplies for the coconspirators to purchase.

### B. Possession with Intent to Distribute:

■ Mr. Deninno asserts the 1.8 liter mixture found in the manufacturing process could not be distributed in its liquid condition. Therefore, he argues, the evidence was insufficient to support a finding that he possessed methamphetamine with the intent to distribute the drug. Assuming this mixture could not be "powdered out," i.e., turned into methamphetamine, Mr. Deninno's argument ignores the 8.5 grams of methamphetamine found in vials in his luggage in the motel room. One of the experts testified this was worth approximately $2,000 and was consistent with amounts that are distributed.

### C. Maintenance of Place to Manufacture Methamphetamine:

■ Mr. Deninno asserts the evidence fails to link him to the motel room. The record fails to support Mr. Deninno's assertions. Mr. Deninno ignores the testimony of at least four of the witnesses, who testified Mr. Deninno spent time in the motel room. The witnesses also testified that Mr. Deninno was the one who selected the motel, made the reservations, and directed the other participants to the motel.

### III

### Rule 404(b) Evidence

During its case in chief, the government elicited testimony from Mr. Deninno's coconspirators that Mr. Deninno had been present at various other methamphetamine cooks within the past several months. Mr. Deninno objected to this testimony arguing it was impermissible under Fed.R.Evid. 404(b). The trial court found the evidence was introduced for the proper purpose of showing Mr. Deninno's knowledge of the process of "cooking" methamphetamine. The court also permitted the evidence for the purpose of demonstrating that Mr. Deninno intended to be a part of the conspiracy, because Mr. Deninno was maintaining he was innocently present at the methamphetamine cook. The trial court found the evidence was not unduly prejudicial and properly instructed the jury.

■ This allegation of error warrants little discussion. Mr. Souders and two other coconspirators testified they were present with Mr. Deninno at recent methamphetamine "cooks"; Mr. Deninno knew how to "cook"; and he carefully guarded the "cooking" process making sure no one but he knew the entire recipe. All three of these individuals also testified that Mr. Deninno had distributed methamphetamine within approximately the same time period. This testimony was relevant to Mr. Deninno's actual participation as opposed to his innocent presence at the cook in the motel room. The testimony also was relevant as to Mr. Deninno's knowledge and ability to manufacture methamphetamine. The court correctly found the probative value of this evidence outweighed any prejudicial effect, and the trial court properly gave a limiting instruction immediately prior to the introduction of this testimony.

■ We review a trial court's admission of 404(b) evidence for abuse of discretion. United States v. Reddeck, 22 F.3d 1504, 1509 (10th Cir.1994). We find no error with the actions of the trial court.

### IV

### Instructional Error

■ Mr. Deninno argues error in the trial court's instruction to the jury concerning the essential elements of the charge of possession of a mixture containing a detectable amount of methamphetamine and the collateral instruction that the government was not required to prove an exact amount of a controlled substance.[2]

---

**2.** The jury was instructed:
 In order to establish the offense charged in Count 2 of the Indictment, the Government must prove beyond a reasonable doubt each of the following three essential elements:

*FIRST:* That on or about the date alleged, the Defendant possessed methamphetamine, a Schedule II controlled substance;
*SECOND:* That the Defendant did so possess with a specific intent to distribute metham-

The instructions given by the trial court informed the jury that the evidence need not establish the amount or quantity of the controlled substance or listed precursor chemical as alleged in the indictment. The court instructed the jury it must find only that there existed a measurable amount of the controlled substance or listed precursor chemical. Mr. Deninno tendered an instruction that would require the jury to find Mr. Deninno possessed 1.8 liters of a substance containing a detectable amount of methamphetamine.

Without any authority, Mr. Deninno asserts the court's instruction to the jury was erroneous. Again, this argument merits little discussion. We regard *United States v. Poole,* 929 F.2d 1476, 1483 (10th Cir.1991) as dispositive. In *Poole,* we held a defendant need only possess a measurable quantity of a controlled substance under circumstances that establish his intent to distribute the substance. We further held the quantity of a substance possessed by the defendant becomes relevant only in computing a base offense level under the sentencing guidelines.

Mr. Deninno next argues the jury was confused by these instructions. This contention merits no discussion.

## V

### The Quantity of Methamphetamine Used for Sentencing

Mr. Deninno contends the sentencing court miscalculated the quantity of methamphetamine for sentencing purposes by including drug quantities outside the one-day time frame of the conspiracy and by including the total amount of the 1.8 liters of waste water containing only detectable amounts of methamphetamine.

*A. Relevant Conduct:*

 A sentencing court is directed to aggregate the quantities of drugs that were a part of the same course of conduct or common scheme as the offense of conviction. *See United States v. Ross,* 920 F.2d 1530, 1538 (10th Cir.1990). A sentencing court may look beyond the charges alleged in the indictment. *United States v. Underwood,* 982 F.2d 426, 429 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 729 (1993). The prosecution must prove and connect to the offense of conviction the additional quantities by a preponderance of the evidence. We will review the sentencing court's factual findings under a clearly erroneous standard. *See Ross,* 920 F.2d at 1538.

The record shows three witnesses testified at the sentencing hearing. There exists more than sufficient evidence to show the manufacture, possession of an inventory, and sales of methamphetamine were part of Mr. Deninno's continuing conduct.

 Mr. Deninno objects to his sentence being based on the uncorroborated statements of individuals of questionable credibility. He complains the testimony of these individuals was little more than an estimate. The credibility of a witness at sentencing is for the sentencing court, who is the trier of fact, to analyze. Applicable case law permits the sentencing court to accept estimates on quantities based on information with a minimum indicia of reliability. *United States v. Guest,* 978 F.2d 577, 579 (10th Cir. 1992). The record on appeal fully supports the sentencing court's factual determinations.

*B. 1.8 Liters of Mixture:*

The sentencing court included in the drug quantity calculation the 1.8 liters of liquid found in the motel room. Expert testimony described this liquid as containing some P2P

---

phetamine, a Schedule II controlled substance; *and*

*THIRD:* That the Defendant did so knowingly and intentionally.
Instruction 35.
The jury was further instructed:
Counts 1, 2 and 3 of the Indictment allege that a particular amount of a controlled substance or listed precursor chemical was in-

volved. The evidence in the case need not establish that the amount or quantity of controlled substance or listed precursor chemical was as alleged in the Indictment, but only that a measurable amount of the controlled substance or listed precursor chemical was in fact the subject of the acts charged in the Indictment.
Instruction 38.

and methamphetamine. Mr. Deninno objected contending this liquid was waste water.

■ The sentencing court, relying upon sentencing guidelines then in force, included the entire weight of the liquid although it contained only a small amount of methamphetamine. *See United States v. Killion,* 7 F.3d 927 (10th Cir.1993), *cert. denied,* ─── U.S. ───, 114 S.Ct. 1106, 127 L.Ed.2d 418 (1994). However, the applicable sentencing guidelines have ˋ since been amended. Amendment 484 to U.S.S.G. § 2D1.1 Commentary (1993). The amendment provides that waste water, which cannot be readily separated from the illegal substance, produced in an illicit laboratory used to manufacture a controlled substance is not considered a mixture or substance for the purposes of U.S.S.G. § 2D1.1. Thus, the full amount of the waste water need not be used in the calculation of quantity of the methamphetamine. The Commission specified that this amendment could be applied retroactively. U.S.S.G. § 1B1.10(a) and (d). *See Souders,* slip op. at 3 (permitting the retroactive application of the new guidelines that provide in essence the waste water from an illicit laboratory would not be counted). The sentencing court made no specific findings in this regard.

■ The government contends that even if the probation office wrongfully included the 1.8 liters and that amount was eliminated from the drug quantity calculation, it would make no difference in Mr. Deninno's sentence. We agree. The marijuana equivalency range for the base offense level of 34 is 3,000 to 10,000 kilograms. U.S.S.G. § 2D1.1(c)(5). Removing the 1,800 marijuana equivalency for the 1.8 liters from the 5,629 kilograms found by the trial court results in a total of approximately 3,800 kilograms remaining. Defendant's base offense level of 34, prior to the addition of the 4 points for leader or organizer, would remain unchanged.

## VI

## Sentencing for D-methamphetamine Rather Than L-methamphetamine

Mr. Deninno, for the first time, claims it was error to calculate his sentence under the sentencing guidelines on the basis of methamphetamine (D-methamphetamine). He contends the trial court should have used L-methamphetamine to determine the marijuana equivalent instead of methamphetamine. By using methamphetamine, Mr. Deninno's base offense level was 34. Had L-methamphetamine been used, the base offense level would have been 26.[3]

■ Mr. Deninno was convicted of methamphetamine offenses, but the sentencing guidelines do not include L-methamphetamine in the score for "methamphetamine." The conversion factor for L-methamphetamine is listed individually. Methamphetamine is commonly understood to mean D-methamphetamine in the sentencing guidelines. *United States v. Patrick,* 983 F.2d 206, 209 (11th Cir.1993).

The presentence report listed the amounts of methamphetamine attributable to Mr. Deninno. The report also converted these amounts to the marijuana equivalents using the conversion ratio for D-methamphetamine and not L-methamphetamine. The sentencing difference between D-methamphetamine and L-methamphetamine is significant. However, for purposes of the trial, the distinction is insignificant. Section 841 of 21 U.S.C. does not distinguish between the various types of methamphetamine.

■ The government has the burden of proving the controlled substance associated was methamphetamine but had no duty to

---

**3.** The sentencing court found by a preponderance of the evidence that Mr. Deninno was accountable for 5,629.16 grams of methamphetamine. For purposes of calculating the base offense level, 1 gram of methamphetamine is equivalent to 1 kilogram of marijuana and 1 gram of L-methamphetamine is equivalent to 40 grams of marijuana. U.S.S.G. § 2D1.1, Drug Equivalency Tables. Using these ratios, 5,629.16 grams of D-methamphetamine is equivalent to 5,629.16 kilograms of marijuana, while 5,629.16 grams of L-methamphetamine is equivalent to 225.17 kilograms of marijuana. Therefore, using D-methamphetamine Mr. Deninno has a base offense level of 34 and using L-methamphetamine a base offense level of 26. U.S.S.G. § 2D1.1.

prove the type of methamphetamine. To convict a defendant, the prosecution must prove, beyond a reasonable doubt, only that the substance was generically methamphetamine. The chemist who testified at trial established that the substance seized from Mr. Deninno was methamphetamine. No tests were done on the methamphetamine to determine the type of methamphetamine.

The government has the burden of proof and production during the sentencing hearing to establish the amounts and types of controlled substances related to the offense. Because the type of methamphetamine is not an element of the crime, it need only be proved by a preponderance of the evidence at sentencing. *See McMillan v. Pennsylvania*, 477 U.S. 79, 85, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986); *see also United States v. Underwood*, 982 F.2d 426, 429 (10th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 729 (1993).

Since the criminal offense makes no distinction between the types of methamphetamine, it cannot be assumed that Mr. Deninno was convicted of possession of D-methamphetamine. None of the evidence offered to either the jury or the sentencing court went to the quality of the methamphetamine involved. No evidence was presented during the trial or during the sentencing hearing that more than one type of methamphetamine exists. Nothing in the record would suggest the possibility of two types of methamphetamine. Methamphetamine was the only substance mentioned in this trial. We agree with the Eleventh Circuit that for sentencing "[t]here must be proof, not a play on words, to justify the added deprivation of liberty that follows the scoring of the drug as D-methamphetamine." *Patrick*, 983 F.2d at 209.

No objection was ever made throughout the trial concerning the type of methamphetamine the witnesses discussed. No objection was made about the type of methamphetamine used for calculations in the presentence report, although the report clearly cal-culated Mr. Deninno's base offense level using D-methamphetamine. No objection was raised at the sentencing hearing as to the type of methamphetamine attributed to Mr. Deninno.

Although the burden of proof is on the government, the burden of alleging factual inaccuracies of the presentence report is on the defendant. Federal Rules of Criminal Procedure 32(c)(3)(D). Failure to object to a fact in a presentence report, or failure to object at the hearing, acts as an admission of fact. *See United States v. Kay* 961 F.2d 1505, 1507 (10th Cir.1992) (Federal Rules of Civil Procedure contemplate an objection to facts in the presentence report "before the district court is required to make a particular finding as to the factual inaccuracy"). Therefore, this issue was not properly preserved for appeal. *United States v. Youngpeter*, 986 F.2d 349, 354 (10th Cir.1993).

The type of methamphetamine is a factual issue for the sentencing court to determine. Therefore, it would be reviewed for clear error if the defendant had properly made an objection. Since Mr. Deninno failed to object, the only appropriate standard of review is plain error. However, factual disputes do not rise to the level of plain error. *United States v. Saucedo*, 950 F.2d 1508, 1518 (10th Cir.1991). By failing to make any objections to the scoring of the methamphetamine, Mr. Deninno has in effect waived the issue for appeal. *Id.*

Accordingly, Mr. Deninno's convictions and sentence are **AFFIRMED.**