**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 6 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CLAYTON ALBERS,

Defendant-Appellant.

No. 97-3228
(D.C. No. 93-CR-10020)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **BARRETT**, and **HENRY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore

ordered submitted without oral argument.

---

[*]      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Clayton Albers returns to this court on appeal of his resentencing following our remand in United States v. Albers, 93 F.3d 1469 (10th Cir. 1996). The background facts of this case are fully set forth in Albers, and, we will repeat here only those facts necessary to our analysis. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Defendant was originally indicted along with seven coconspirators, who all entered guilty pleas prior to trial. Defendant proceeded to trial where he was convicted by a jury for conspiracy to manufacture methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, possession or distribution of ephedrine while knowing or having reasonable cause to believe the listed chemical would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(2) and 18 U.S.C. § 2, and manufacture of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant was sentenced to life imprisonment.

On appeal, this court affirmed defendant's convictions, but concluded that the sentencing court's four-level enhancement pursuant to U.S.S.G. § 3B1.1 for his role as a leader or organizer was error requiring remand for resentencing. See Albers, 93 F.3d at 1489. On remand, the district court held a de novo resentencing hearing resulting in defendant's resentencing without enhancement for his role in the offenses of conviction. At resentencing, the court determined

that defendant's base offense level was forty predicated on a finding that thirty-six kilograms of d-methamphetamine were attributable to him. The court then resentenced defendant to 360 months on counts one and three, and ten years on count two to run concurrently. Defendant appeals the resentencing, asserting that the government did not meet its burden of proof as to the quantity and type of methamphetamine used to determine his sentence.

"[D]rug quantity determinations by a sentencing court are reviewable for clear error." United States v. Ruiz-Castro, 92 F.3d 1519, 1534 (10th Cir. 1996). We afford deference to the sentencing court's application of the guidelines to the facts. See id. The government has the burden of proving the quantity of drugs for sentencing by a preponderance of the evidence. See id.

This is a "no dope" case in which the government did not seize or test any of the methamphetamine underlying defendant's conviction. When a determinate quantity of drugs is not actually seized, the court may rely on an estimate of drug quantity to establish a base offense level, as long as the information relied on in making an estimate is factually supported and has sufficient indicia of reliability. See id. The district court's estimate of at least thirty-six kilograms of methamphetamine attributable to defendant for sentencing purposes was based on the testimony of several of defendant's coconspirators at trial and the testimony of Craig Stansbury, a DEA agent, at defendant's resentencing hearing. Agent

-3-

Stansbury testified that he had interviewed several of defendant's coconspirators including Patrick Cambron, Jack Francis, and James Randa. Agent Stansbury had also been present during defendant's trial and heard the testimony of these coconspirators.

From this testimony, it was apparent that Mr. Cambron and defendant were responsible for obtaining a large amount of ephedrine, the precursor chemical necessary for the methamphetamine manufacturing operation in California. Mr. Francis and Mr. Randa operated the lab in California and were the actual manufacturers of the methamphetamine. Defendant, through his fertilizer business, ordered one hundred kilograms of l-ephedrine which arrived in four twenty-five-kilogram drums.[1] Mr. Cambron testified that when they took delivery of the ephedrine, he and defendant repacked it in eight separate boxes and sent it on to coconspirator Mike Marino in California. Mr. Cambron testified that each drum of ephedrine would yield approximately forty pounds of methamphetamine, for a total of 160 pounds or 73 kilograms. Mr. Cambron told Agent Stansbury

---

[1] Defendant owned and operated a fertilizer business in Wichita called AgriData. It appears that defendant and Mr. Cambron used the nature of this business as justification for the order of ephedrine, telling the supply company that it was to be used as a growth enhancer in fertilizer. When the supply company notified the DEA, the DEA allowed the order to be filled, but advised the supply company to notify DEA again if a subsequent order was received. When the supply company received a second order from defendant, it began its investigation which resulted in the arrests of the members of the conspiracy.

-4-

that he personally sold eighty pounds, or thirty-seven kilograms, of methamphetamine at the price of $10,000 per pound. There was testimony at trial that defendant received at least $77,000 of this amount at various times and in various ways. See Albers, 93 F.3d at 1473. Consistent with Mr. Cambron's testimony, Sanford Angelos, a DEA chemist, testified that, using the red phosphorus method, 100 kilograms of l-ephedrine would yield approximately 30 to 90 kilograms of methamphetamine.

Defendant argues that the court's reliance on the testimony of Mr. Cambron as to the amount of methamphetamine produced lacks the requisite indicia of reliability, and therefore, he should be sentenced based only on the amount of ephedrine obtained by the conspiracy. See U.S.S.G. § 2D1.11 (twenty or more kilograms of ephedrine results in an offense level of twenty-eight). In United States v. Beaulieu, 893 F.2d 1177 (10th Cir. 1990), this court affirmed the sentencing court's reliance on the testimony, in a separate trial, of defendant's brothers and coconspirators. We held that, providing "'the information has sufficient indicia of reliability,'" the court may properly consider it at sentencing "'without regard to its admissibility under the rules of evidence applicable at trial.'" Id. at 1179-80 (quoting U.S.S.G. § 6A1.3).

We agree with the resentencing court's conclusion that there was no serious dispute that at least thirty-six kilograms of methamphetamine were attributable to

defendant. Defendant has not established that Mr. Cambron's trial testimony regarding the amount of ephedrine purchased, the yield of methamphetamine from the ephedrine (which comported with the testimony of Mr. Angelos, the DEA chemist), the amount Mr. Cambron admitted he personally sold, and the evidence of the amount of the proceeds of the operation defendant received failed to possess sufficient indicia of reliability to support the thirty-six kilogram amount used to determine defendant's sentence. See Beaulieu, 893 F.2d at 1181 (holding that reliable hearsay may be used at sentencing to determine the appropriate punishment). Therefore, we determine no clear error in the district court's calculation of the quantity of drugs attributable to defendant for purposes of establishing his base offense level.

Next, defendant asserts that the sentencing court erred in sentencing him based on d-methamphetamine rather than the less onerous sentence which would result from l-methamphetamine.[2] At defendant's resentencing hearing, Agent Stansbury testified that in his interviews with Mr. Francis and Mr. Randa, they told him they manufactured the methamphetamine using ephedrine, hydriodic

---

[2]    For purposes of calculating a base offense level, one gram of d-methamphetamine is equivalent to one kilogram of marijuana and one gram of l-methamphetamine is equivalent to 40 grams of marijuana. See U.S.S.G. § 2D1.1, Drug Equivalency Tables. There is, therefore, a significant sentencing difference between the two isomers. See United States v. Deninno, 29 F.3d 572, 579 & n.3 (10th Cir. 1994).

acid, and red phosphorus. Agent Stansbury further testified as to his thirteen years' experience as part of the DEA's lab team, his training in the manufacture of methamphetamine, and his discussions with John Meyers, a chemist, regarding the red phosphorus method of methamphetamine manufacture. Agent Stansbury testified that Mr. Meyers told him the red phosphorus method yielded d-methamphetamine, and that this fact was consistent with Agent Stansbury's experience and training. Agent Stansbury also testified that l-methamphetamine is an isomer rarely seen on the streets due to its less desirable potency.[3]

Defendant argues on appeal that the government did not establish by a preponderance of the evidence that the methamphetamine involved in his offense was d-methamphetamine instead of the less potent l-methamphetamine. We disagree. "We review a district court's factual finding that a specific isomer of methamphetamine was involved in criminal activity for clear error." United States v. Lande, 40 F.3d 329, 330 (10th Cir. 1994). We will not disturb a sentencing court's finding unless it lacks factual support in the record, or "we are

---

[3]     Because the l-methamphetamine isomer is less desirable, is rarely seen on the streets, and is the product of a "botched attempt to produce d-methamphetamine," the Sentencing Guidelines were amended on November 1, 1995, to eliminate the distinction between the two isomers for sentencing purposes. Amendment 518, U.S.S.G. Manual, Appendix C at 423. "Under this amendment, l-methamphetamine would be treated the same as d-methamphetamine (i.e., as if an attempt to manufacture or distribute d-methamphetamine)." Id.

left with the definite and firm conviction that a mistake has been made after reviewing all of the evidence." Id. The government bears the burden of proving by a preponderance of the evidence the type of methamphetamine involved in the offense of conviction. See United States v. Glover, 97 F.3d 1345, 1347 (10th Cir. 1996).

Here, the court found that the methamphetamine involved in defendant's offense was, more likely than not, d-methamphetamine. In reaching this conclusion, the sentencing court again relied on the testimony of defendant's coconspirators presented at defendant's trial regarding the manufacture and sale of the methamphetamine, and the testimony of Agent Stansbury regarding his experience with methamphetamine manufacture as well as his discussions with Mr. Meyers as to the isomer produced by the red phosphorus manufacture method used by defendant's coconspirators in California. Moreover, when the drums which had contained the ephedrine were seized at defendant's place of business, they were labeled l-ephedrine, and although they had been refilled with potash, there were detectable traces of l-ephedrine remaining. According to Mr. Meyers, the precursor chemical, l-ephedrine, always produces the d-methamphetamine isomer.

Here, the government adequately established that the substance involved in defendant's offenses of conviction was d-methamphetamine. See United States v.

Dudden, 65 F.3d 1461, 1471 (9th Cir. 1995) (even when "no direct evidence of the drug's chemical composition or the method of its manufacture is available, circumstantial evidence may be sufficient to determine which isomer is involved"); see also Lande, 40 F.3d at 331 (relying on circumstantial evidence to uphold finding that drug involved was d-methamphetamine). Accordingly, based upon our review of the record, we conclude that the district court did not commit clear error in finding that the methamphetamine involved in the conspiracy for which defendant was convicted was, more likely than not, d-methamphetamine.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.

Entered for the Court

Robert H. Henry
Circuit Judge