**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 29 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CLARENCE RAY SOUTH,

      Defendant-Appellant.

No. 98-6015
(D.C. No. CR-97-90)
(Western District of Oklahoma)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **HENRY** , and **LUCERO** , Circuit Judges.

---

**INTRODUCTION**

In May 1997, a grand jury returned a two-count indictment charging

Clarence Ray South with attempting to manufacture methamphetamine in

violation of 21 U.S.C. § 841(a)(1) and with possessing a firearm in violation of

18 U.S.C. § 922(g)(1).  After the court dismissed the firearms count, a jury

convicted Mr. South of attempting to manufacture methamphetamine in violation

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of 18 U.S.C. § 841(a)(1), and the court sentenced him to 175 months imprisonment.  Mr. South appeals his conviction and sentence, arguing that:  (1) the district court erred when it admitted an affidavit he signed into evidence; (2) there was insufficient evidence to support his conviction; and (3) the district court improperly calculated the amount of methamphetamine for sentencing purposes.   We affirm both Mr. South's conviction and sentence.

**DISCUSSION**

**I      Admission of Mr.   South's Affidavit**

While Mr. South was incarcerated in county jail on an unrelated charge, Clarence Broadway, a private attorney representing Shirley Gilleland (Mr. South's ex-wife and co-defendant), telephoned him.  During that conversation, Mr. South told Mr. Broadway that Ms. Gilleland had no involvement in his personal affairs.  Mr. Broadway then prepared the foregoing affidavit and brought it to Mr. South, who was still in county jail.  After Mr. Broadway assured Mr. South that the affidavit "pretty much conformed to the idea and the notion that he communicated to me on the phone, . . . that is that Ms. Gilleland did not know anything about his personal affairs,"  Rec. vol. III, at 87, Mr. South signed the affidavit.  Mr. South, who was unrepresented at the time, did not consult an attorney before signing the affidavit.

2

At trial, over Mr. South's objection, the district court admitted the affidavit, which stated:

> I, Clarence R. South, being of lawful age and being first duly sworn upon my oath, do depose and say as follows:
>
> 1. I am the Codefendant in the United States Western District of Oklahoma Case No. CR-97-90-C.
>
> 2. I am familiar with the charges made by the United States Government in said case.
>
> 3. If I were granted limited immunity, I am prepared and willing to testify on behalf of the Codefendant, Shirley Jane Gilleland.
>
> 4. More specifically, I would testify that the said Gilleland had no knowledge whatsoever of the thoughts, plans, and activities of myself and that she had no reasonable awareness of my activities, and any involvement she had in my affairs was not intentional.
>
> 5. Without being first granted immunity I am unable to recite in any further or greater detail the substance of my proposed testimony.
>
> FURTHER, affiant saith not.

See Aple's Br. Attachment A; Rec. vol. III, at 78-85. The affidavit bore Mr. South's signature. Mr. South argues now, as he did below, that the admission of this affidavit violated his Fifth and Sixth Amendment rights and also that it is inadmissible under Fed. R. Evid. 403.

Mr. South concedes that "[Mr.] Broadway was not acting as an agent of the government" when he procured Mr. South's signature on the affidavit. Aplt's Br.

3

at 8. The Supreme Court's suppression jurisprudence requires that a defendant demonstrate that the state played some role in obtaining the evidence he seeks to suppress. See Colorado v. Connelly, 479 U.S. 157, 165 (1986); see also id. at 170 ("The sole concern of the Fifth Amendment . . . is governmental coercion."). Thus, even "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible." Id. at 166. Consequently, there is no constitutional basis for excluding Mr. South's affidavit.

Mr. South's Rule 403 argument is similarly unavailing. Fed. R. Evid. 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The affidavit represented an attempt by Mr. Broadway to exculpate his client, Ms. Gilleland. By stating that Ms. Gilleland "had no knowledge whatsoever of the thoughts, plans, and activities," Mr. South implies that he was involved in some sort of illegal activity. Such an implied admission is probative of Mr. South's guilt and, hence, relevant. See United States v. Medina, 755 F.2d 1269, 1274-75 (7th Cir. 1985). In fact, Mr. South admits as much when he states in his brief that the affidavit was "certainly inculpatory and in many respects amounts to a statement against interest or a confession." Aplt's Br. at 7.

4

Mr. South argues that because he did not understand the affidavit at the time he signed it, the district court should have excluded this evidence as unfairly prejudicial. However, at trial, Mr. Broadway testified that Mr. South reviewed the statement prior to signing it. In light of this testimony, we hold that the district court did not abuse its discretion when it determined that the danger of unfair prejudice did not substantially outweigh the affidavit's probative value. Our conclusion is buttressed by the fact that Mr. South had the opportunity to take the stand to explain the circumstances surrounding his signing of the affidavit. See United States v. Harris, 956 F.2d 177, 180 (8th Cir. 1992) (Reasoning that because the defendant "had ample opportunity to explain the statement's context and meaning to the jury," admission of his inculpating statement was not unfairly prejudicial).

## II    Sufficiency of the Evidence

Sufficiency of the evidence is a question of law we review de novo. United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). We will deem evidence sufficient to support a conviction if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the government, a reasonable jury could find the defendant guilty. Id.

At trial, the government introduced many pieces of evidence showing that Mr. South was renting a house located a 3938 Southeast 44th Street in Oklahoma

City and that this house caught fire on April 2, 1997. A witness testified that Mr. South was present at the house on the day it caught fire. The witness, who was familiar with the odor produced by the manufacture of methamphetamine, stated that such an odor was present at the house on the day that it caught on fire. That witness testified that when the fire started, Mr. South fled the house and drove to a residence located on Shallow Brook Drive on Oklahoma City. Mr. South never contacted his landlord or the fire department about the fire, and he never claimed several of his automobiles, which were found on the property at the time of the fire.

After being alerted by firefighters, law enforcement officers discovered chemicals and lab apparatus that indicated that the house at 3938 Southeast 44th Street had been used as a methamphetamine laboratory. At the house, the officers also found a receipt for some of the lab equipment and chemicals; the receipt bore Mr. South's phone number. When law enforcement officers subsequently executed a search warrant at a residence located at 4712 Shallow Brook Drive in Oklahoma City, they discovered paperwork belonging to Mr. South as well as chemicals and laboratory equipment similar to those which they had discovered in the house at 3938 Southeast 44th Street. Finally, as discussed earlier, Mr. South swore out an affidavit implying that he was involved in the illegal activities that were the subject of the indictment in this case.

6

Although the evidence linking Mr. South to the methamphetamine laboratory is only circumstantial, viewing it and all reasonable inferences therefrom in the light most favorable to the government, we conclude that a reasonable jury could find Mr. South guilty of attempting to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1). Accordingly, we affirm his conviction.

## III    Computation of Drug Quantity

Mr. South also attacks his sentence, contending that the district court improperly included waste materials when it computed the amount of methamphetamine. Although Mr. South is correct when he asserts that waste products should not be used in calculating drug quantities for sentencing purposes, see United States v. Deninno, 29 F.3d 572, 579 (10th Cir. 1994), his argument must nonetheless fail.

First, Mr. South has failed to include the transcript of the sentencing hearing in the record on appeal. [1] Thus, we cannot know what formed the basis of the district court's decision to sentence Mr. South to 175 months imprisonment. And absent such information, meaningful review of the district court's decision is impossible. See Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979-80 (10th Cir.

---

[1]In fact, our review of the district court's docketing sheet indicates that no transcript of the hearing was ever prepared.

7

1992) (affirming district court's judgment based on appellant's failure to include necessary documents in appellate record).

Moreover, Mr. South failed to raise the waste-product argument in his objections to the probation officer's presentence investigation report (which Mr. South did designate as part of the record). Without the transcript from the sentencing hearing, Mr. South cannot show that he raised this argument at the sentencing hearing. Thus, his failure to object to the presentence report is tantamount to a waiver of this argument. See Deninno, 29 F.3d at 580 ("Failure to object to a fact in a presentence report, or failure to object at the hearing . . . in effect waive[s] the issue for appeal."). And although we would normally proceed to conduct a plain error review in such circumstances, see id., the absence of a transcript of the sentencing hearing prevents us from doing even this.

Finally, in his brief, Mr. South cites to a page of the trial transcript that supposedly demonstrates that an Oklahoma State Bureau of Investigation (OSBI) officer improperly included waste materials in making his calculation of the amount of methamphetamine that was produced in this case. However, our review of the transcript reveals that the OSBI officer's testimony did not even suggest that his computation included waste materials. See Rec. vol. III, at 35. Rather, he based his estimate on an extrapolation, which was, in turn, premised on the amount of precursor chemicals discovered at the lab. We have previously

8

approved this method of drug calculation for sentencing purposes.     See United

States v. Havens  , 910 F.2d 703, 704-05 (10th Cir. 1990);     see also  United States

v. Basinger , 60 F.3d 1400, 1409-10 (9th Cir. 1995) (affirming sentence where no

drugs or precursor chemicals were found and theoretical methamphetamine yield

calculation was based only on capacity of empty ephedrine containers).

In sum, Mr. South has provided no factual support for his waste-product

argument.  Without such support, this argument must fail.

## CONCLUSION

For the foregoing reasons, we hereby AFFIRM Mr. South's conviction and

sentence.

Entered for the Court,

Robert H. Henry
Circuit Judge