**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 1999**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

BOUN VINAITHONG,

     Defendant-Appellant,

and

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

SOMSY SIHARATH,

     Defendant-Appellant.

No. 97-6328
(D.C. No. CR-97-66-M)
(W.D. Oklahoma)

No. 97-6335
(D.C. No. CR-97-66-M)
(W.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **LUCERO**, Circuit Judges

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendants/appellants Somsy Siharath and Boun Vinaithong, along with their wives, were among five people named in a one count indictment alleging that they had conducted an illegal gambling business in violation of 18 U.S.C. §§ 1955 and 2. Later, the same persons were charged in a superseding information with one count of using interstate communications facilities to transmit gambling information in violation of 18 U.S.C. §§ 1084 and 2. Siharath and Vinaithong each pleaded guilty to the single count alleged in the superseding information, and each now brings a timely appeal alleging errors in the sentence imposed. Our jurisdiction is based on 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and for convenience and economy we will decide the two appeals together by this order and judgment.

**I**

**A**

The records presented in these cases are sparse. For example, in neither case does our record include the statement of the defendant which we presume was taken in compliance with Fed. R. Crim. P. 11(f) describing in the defendant's own words the conduct on which the guilty plea was based. The sketchy outline of the crimes of conviction which follows is based entirely on statements from the Presentence Reports (PSRs) prepared in these two cases. The sources of the information are not identified. The district judge made very sparse findings with respect to the disputes over issues of fact presented in the PSRs.

We accept as true, however, all facts in the PSRs except those to which the defendants raised specific objections. *United States v. Deninno*, 29 F.3d 572, 580 (10 th Cir. 1994) (failure to object to a fact in a presentence report acts as an admission of fact). *See also United States v. Kay*, 961 F.2d 1505, 1507 (10th Cir. 1992). After we have reviewed the facts as set out in the PSRs, we will note the objections raised by the defendants, and the court's resolution of those issues.

Defendants and others were involved in a gambling enterprise which has been referred to as a "mirror lottery," because the activity was structured as a copy of the Illinois state lottery. Participants wagered by purchasing numbers for the nightly drawing of winners in the Illinois lottery, which was broadcast on a television station carried via cable in many states including Oklahoma and Texas. Winners in the defendants' "mirror" lottery were apparently determined by the Illinois drawing. Somsy Siharath and his wife operated a business in Oklahoma City known as the "Asian Market." Boun Vinaithong and his wife operated a business in Haltom City, Texas, a suburb of Fort Worth, known as "Hongthong Oriental Foods and Gifts." Wagers taken in Oklahoma were relayed by electronic facsimile every evening to the Vinaithongs, either at their home in Richland Hills or at their business. The fifth defendant, Chansamouth Kounlavouth, assisted in the enterprise on the Fort Worth end, and the PSRs state that Kounlavouth was the bookkeeper of the enterprise.

Numbers were sold directly by the Siharaths at the Asian Market or were brought in by individual bet-takers, of whom three were named in the original indictment but none were

charged as far as our records show. According to the PSR prepared in Mr. Siharath's case, the Siharaths received wagers totaling between $1,000 and $2,000 per day, from which they realized a profit of $300 to $400 per day. The Siharaths kept twenty per cent of the bets placed directly through them, while for those placed through the individual bet-takers, the Siharaths generally would keep ten per cent and the bet-taker would receive ten per cent.

The Vinaithongs paid the winners out of the eighty per cent remaining and kept the difference, less 20 per cent which was paid to Kounlavouth. The amount of profit to the Vinaithongs is not stated in the PSR. The PSR for defendant Boun Vinaithong stated that the "defendant and his wife directed the Siharaths, Kounlavouth, and several bet-takers in the Ft. Worth area." PSR p. 4, ¶ 12. Substantial amounts of cash were seized from defendants' residences and businesses and from safe deposit boxes in the names of Mrs. Vinaithong and Mr. Kounlavouth. There is some indication that all of these monies were forfeited to the government without opposition from the defendants. Other substantial assets were also seized, some of which were likewise forfeited without opposition and some of which were returned.

Our record does not include the objections filed by Mr. Siharath to the PSR, but at least the substance of the objections is reflected in the addendum to his PSR, prepared by the probation office. In Mr. Vinaithong's case, the government has provided a copy of his objections, and we also have the probation officer's response in the addendum to his PSR. As to the facts summarized in the PSRs, each defendant objected to the finding that he

supervised and directed the activities of others. Each defendant maintained that he only managed property. The probation officer summarized Vinaithong's objections as stating that "defendant maintains that the leadership enhancement does not apply. He contends that he controlled property and did not make leadership decisions and, therefore, the provisions of U.S.S.G. § 3B1.1(a) do not apply."

The probation officer's response to Siharath's objection stated that defendant and his wife were "mid-level managers" and "were not on equal footing with the bet-takers." The officer concluded that Mr. Siharath clearly was receiving a greater share of the profits than the bet-takers and that he directed the bet-takers how to handle the operation. Defendant Siharath was said to have the power to hire and fire bet-takers. The response also opined that Siharath did not have to give orders every day to the bet-takers because "their roles were clearly delineated at the onset of the operation." Finally, the response notes that Mrs. Vinaithong had stated that Mrs. Siharath had the initial idea to begin the gambling operation.

As to Mr. Vinaithong's objection to the finding that he supervised or directed others, the probation officer's response again opined that daily supervision was not necessary because the roles had been delineated early in the operation. The response also stated that Vinaithong had the power to hire and fire bet-takers. As to Vinaithong's relationship with Kounlavouth, the response said that if the relationship was a partnership, they were not equal partners because Kounlavouth received only twenty per cent of the gross wagers. (The conclusion that this was less than the net profits retained by the Vinaithongs after paying

winners is not supported by any calculation of the net profits after accounting for amounts paid out to winning bettors.)

Our record shows that all five indicted defendants were sentenced during the same session of court. Mr. Siharath testified that he did not give directions to the bet-takers, that they were not his employees, that he did not recruit them but that they were friends. The bet-takers were not given any quotas, nor were they disciplined in any way for not bringing in more bets. Siharath testified that the arrangement for him and his wife to keep twenty per cent (split with the bet-takers for the bets placed through them) was based on Laotian custom. When asked on cross-examination if he told the bet-takers to bring their wagers to him by a certain time, he said that he did, based on the time that the Vinaithongs told him. He did not punish or reprimand the bet-takers if they did not meet this deadline. Mrs. Siharath testified only regarding the prevalence of gambling in Laotian culture.

At the sentencing hearing for Mr. Vinaithong the only witness addressing the leadership enhancement issue was the defendant. His wife, Mrs. Vinaithong, testified only with regard to the prevalence of gambling in Laotian culture. Mr. Vinaithong testified that all five of the defendants were partners in the gambling enterprise. Testifying through an interpreter, Vinaithong first said that he did not know how the revenues of the gambling business were split, but later said that the Siharaths kept twenty per cent, while he and his wife split the remaining eighty per cent, less expenses, equally with Mr. Kounlavouth. He denied that he or his wife supervised any of the other participants. On cross-examination,

Mr. Vinaithong denied that there were bet-takers in locations other than the Oklahoma City area.

**B**

At sentencing, the district judge followed the recommendation of the PSR and increased the offense level of Mr. Vinaithong (his base offense level was 12) by four on the basis that he was an organizer or leader of a criminal activity that involved five or more participants and which was otherwise extensive, applying U.S.S.G. § 3B1.1(a). *See* PSR at ¶ 23. Vinaithong was given a three level reduction for acceptance of responsibility, netting a final offense level of 13. *See* Judgment at 6. With a criminal history category of I (no previous arrests of any kind were noted on the PSR), Vinaithong's guidelines range was twelve to eighteen months, and he was sentenced to serve imprisonment of twelve months and one day. He was also sentenced to one year of supervised release, a fine of $500, and a special assessment of $50.

Mr. Siharath was given a two level reduction in the offense level for acceptance of responsibility (his base offense level also was 12). Like Mr. Vinaithong, Mr. Siharath had no prior criminal record and so was in criminal history category I. His offense level was increased under U.S.S.G. § 3B1.1(c) by two on the basis that he had been an organizer, leader, manager, or supervisor in the criminal activity. After off-setting the one enhancement and the one reduction, Siharath was left with an offense level of twelve, for which the guidelines sentencing range was ten to sixteen months. *See* Judgment at 6. Significantly,

however, Siharath's combination of offense level and criminal history category is classified under the Guidelines in "Zone C" whereas Vinaithong's combination of offense level and criminal history category is classified in "Zone D." The most significant effect of this distinction is that Siharath was eligible to receive "substitute punishment" for one-half of his sentence of imprisonment. U.S.S.G. § 5C1.1(d)(2). Using this provision of the Guidelines, the district judge sentenced Siharath to only five months' imprisonment, to be followed by one year of supervised release including ninety days of home confinement. He was also fined $500 and ordered to pay a special assessment of $50.

## II

Both defendants contest the district court's decision to increase their offense levels for their roles in the offense under U.S.S.G. § 3B1.1. We review the district court's factual findings supporting a sentence enhancement for clear error and the application of those facts to the Sentencing Guidelines *de novo*. *United States v. Valdez-Arieta*, 127 F.3d 1267, 1270 (10th Cir. 1997).

Section 3B1.1 states:

> Based on the defendant's role in the offense, increase the offense level as follows:
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

The Guidelines list several factors that a sentencing court should take into account in determining whether a defendant's role in the offense qualifies for an enhancement under section 3B1.1. These include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n. 4). The burden of persuasion is on the government, as the party seeking to increase the defendant's sentence, to establish the factual basis for any enhancement by a preponderance of the evidence. *United States v. Torres*, 53 F.3d 1129, 1142 (10th Cir. 1995).

We have held that the sentencing court must make specific findings to support enhancements under this section. *E.g., Valdez-Arieta*, 127 F.3d at 1269-70. "Our cases require the district court to make *findings*, not conclusions. Moreover, even if the record evidence overwhelmingly supports the enhancement, appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement." *United States v. Wacker*, 72 F.3d 1453, 1477 (10th Cir. 1995); *see also United States v. Pelliere*, 57 F.3d 936, 940 (10th Cir. 1995); *Torres*, 53 F.3d at 1143; *United States v. Roberts*, 14 F.3d 502, 523 (10th Cir. 1993).

As we previously noted, Siharath's offense level was increased by two, and Vinaithong's by four. The district court made no subsidiary findings to support increasing

Vinaithong's offense level; instead, the judge simply announced that she was overruling defendant's objection to the recommendation in the PSR. At the sentencing hearing for defendant Vinaithong, following the evidentiary presentation and argument the judge stated: "Mr. Heiskell [counsel for Vinaithong], your objection to paragraph number twelve is denied." App., Exhibit O, Transcript of Sentencing Hearing, at 16. Defendant Vinaithong's objection to paragraph 12 was summarized by the probation officer's response as follows:

> The defendant maintains that the leadership enhancement does not apply. He contends that he controlled property and did not make leadership decisions and, therefore, the provisions of U.S.S.G. § 3B1.1(a) do not apply.

Addendum to the Presentence Report at 11. We feel this is a correct statement of the essence of defendant's objections. See Supp. App. at 7-9. Thus the defendant's objection to the leadership adjustment in the PSR was rejected by the ruling below. This showed the judge's determination that Vinaithong had a leadership role in the enterprise.

In defendant Vinaithong's case we are thus impeded in addressing the defendant's appellate issues by the cryptic ruling below. However, no procedural error is claimed in connection with the finding stated by the trial judge. Instead, Vinaithong complains that the PSR "does not substantiate that Boun Vinaithong had a leadership role that exceeded that of his wife and all of the other defendants . . . ." Brief of Defendant-Appellant Vinaithong at 9. Then other attacks are made on the ruling below upholding the enhancement by four levels under § 3B1.1(a). He argues that the presentence investigation contained facts which contradict the determination of his having a leadership role; that others profited to the same

extent that he did; that he testified without contradiction that the operation was run by his wife; and other contentions which do not persuade us. *Id.* at 9-10. None of these arguments attacking the leadership determination and the § 3B1.1(a) enhancement assert any error or prejudice to Vinaithong's appeal because of the manner in which the trial judge stated her ruling.

We have considered the various challenges Vinaithong makes to the leadership determination and are not persuaded that they demonstrate error in her ruling. For example, in his objections to the PSR, defendant Vinaithong stated, Aple. App. at 9: "The Vinaithongs assert that between 10 to 20 people in Ft. Worth placed bets with them. The remaining bets came from Oklahoma City via the Siharaths." Defendant says these facts show lack of support for any conclusion the operation was "otherwise extensive." Instead, we are persuaded that the trial judge had these and other facts before her which supported an inference of a leadership role by the defendant Boun Vinaithong.

As the probation officer's response to defendant Vinaithong's objections to the PSR notes, this defendant and his wife were involved in an extensive gambling operation, this involved at least nine active participants, and defendant and his wife received approximately eighty per cent of the proceeds from which they had to pay out gambling debts. Addendum to PSR at 11. The response noted that defendant Vinaithong was receiving a larger share of profits than others. And they did not have to give direct orders to others as their roles were clearly delineated at the onset of the operation. *Id.* at 11.

In sum, as to defendant Vinaithong, we are convinced that the trial judge did not err in her determination to reject the objections to paragraph 12 of the PSR. It stated that defendant and his wife received eighty per cent of the proceeds from the gambling operation, from which they paid the winners, and that the defendant and his wife directed the Siharaths, Kounlavouth, and several bet-takers in the Ft. Worth area. *Id.* From the facts established in the record the judge did not err in granting the enhancement under § 3B1.1(a) for a leadership role as to defendant Boun Vinaithong.

As to Siharath, after hearing testimony from him the judge stated:

Based upon the credibility of this witness as well as upon the fact that Mr. [Siharath] has testified that he told the bet takers to make the bets by a certain time, so that he could get those bets to the Vinaithongs . . . I find that the minimum two-level enhancement is appropriate in this case with Mr. [Siharath] at least being a leader to that extent.

Siharath App. at 43-44. The single finding reflected here (that defendant told the bet-takers that the bets had to be turned in by a certain time in order to be relayed to the Vinaithongs) is not clearly erroneous. Moreover, the argument of defendant Siharath again is that the defendants managed or supervised "the property," rather than people. The play on words is not persuasive. The effect was that the bet-takers as participants in the gambling enterprise were under the leadership of Siharath, "at least being a leader to that extent," as the trial judge found. We find no error in the judge's determination to grant the two-level enhancement pursuant to § 3B1.1(c).

-12-

# III

Both defendants seek to appeal the district court's denial of their motions for downward departure based on cultural differences. As we have already noted, both defendants offered evidence at their sentencing hearings regarding the prevalence of gambling in Laotian culture. After hearing this evidence, the district court in each case denied the motion without explanation.

Counsel for Mr. Siharath candidly acknowledges the threshold question posed by this argument – whether this court has jurisdiction to review the denial of a motion for downward departure. We do not have jurisdiction. Almost five years ago we said that

> we no longer are willing to assume that a judge's ambiguous language means that the judge erroneously concluded that he or she lacked authority to downward depart. We think that "the district courts have become more experienced in applying the Guidelines and more familiar with their power to make discretionary departure decisions under the Guidelines."

*United States v. Rodriguez*, 30 F.3d 1318, 1319 (10th Cir. 1994) (quoting *United States v. Barrera-Barron*, 996 F.2d 244, 246 (10th Cir. 1993)).

Here there is not even an ambiguous explanation; there is only silence which defendants would have us read as ambiguous. Even if we were willing to do so, and we are not so willing, that would be insufficient. We infer, moreover, from the fact that the district judge listened to evidence and argument on this point, that the judge recognized her discretionary authority to depart and simply was not persuaded to exercise it. In any event, we lack jurisdiction to review this issue.

Mr. Siharath also would have us review the district court's denial of his motion to depart downward on the basis of his offense being a single act of aberrant behavior. Because defendant can cite to nothing in the record which unambiguously indicates that the district judge mistakenly believed that she lacked the power to consider this motion, we have no jurisdiction to review this discretionary decision, either.

## IV

Mr. Vinaithong asserts that his counsel had an irreconcilable conflict of interest in the sentencing phase in representing three clients – Mr. Vinaithong, Mrs. Vinaithong, and Mr. Kounlavouth. He contends that he was denied effective assistance of counsel at this critical stage of the proceedings against him in violation of his constitutional rights because his interests were in direct conflict with those of the co-defendants who were represented by the same attorney. Mr. Vinaithong points particularly to the conflict in his interests and those of the co-defendants with respect to the inquiry as to the role played by each in the organization and operation of the gambling enterprise. As we have discussed, the district judge concluded that Mr. Vinaithong was the leader or organizer of the enterprise, increasing his offense level by four, whereas the judge sustained the objection by Mrs. Vinaithong to any increase in her offense level for her having had any role of direction or leadership.

The right to conflict free representation may be waived. *See United States v. Bowie*, 892 F.2d 1494, 1502 (10th Cir. 1990). The record includes a written waiver of the right to separate representation. Aple. Supp. App. 6. Appellate counsel's treatment of this waiver

-14-

consists of a single sentence: "Even though Boun Vinaithong apparently waived the conflict of interest, it is doubtful that he was aware of the full import of his action and should not be held accountable." Aplt. Brief at 12. We have been presented no evidence which would show that Mr. Vinaithong was inadequately informed or that he lacked understanding of the import of his waiver. We will not question the validity of a written waiver – which we may assume was executed under the supervision of the district court in compliance with Fed. R. Crim. P. 44(c) – on the basis of counsel's speculative assertion.

## V

The sentences are AFFIRMED.

Entered for the Court


William J. Holloway, Jr.
Circuit Judge